Commonwealth v. Garuti.

COMMONWEALTH vs. JOSEPH M. GARUTI.

Plymouth. February 6, 2009. - June 10, 2009.

Present: MARSHALL, C.J., IRELAND, CORDY, BOTSFORD, & GANTS, JJ.

*Homicide. Practice, Criminal,* Capital case, Assistance of counsel, Voir dire, Admissions and confessions, New trial. *Evidence,* Admissions and confessions, Relevancy and materiality. *Malice.*

At a murder trial, the judge did not commit an abuse of discretion in questioning prospective jurors during voir dire regarding possible bias with regard to domestic violence, where, although the defense theory was that the victim's death was an accident, the Commonwealth's evidence supported an allegation that the victim's death was an incident of domestic violence. [51-52]

At a murder trial, the judge did not err in admitting in evidence the defendant's unrecorded statement to police, where the judge instructed the jury regarding this court's expressed preference that such interrogations be recorded [52-53]; further, error, if any, arising from the judge's admission in evidence of an abuse prevention order obtained by the victim against the defendant some five years before the victim's death was not prejudicial, where the order was cumulative of other evidence of hostility between the victim and the defendant [53-54].

At a murder trial, the judge did not err in denying the defendant's motion for a required finding of not guilty, where there was ample evidence that the defendant, who struck the victim with his motor vehicle and then backed over her, had acted with extreme atrocity or cruelty. [54-55]

A trial court judge did not err in denying, without an evidentiary hearing, a criminal defendant's motion for a new trial, in which the defendant claimed that trial counsel had rendered ineffective assistance in cross-examining Commonwealth witnesses, where trial counsel's performance in that area was more than adequate and appropriate [55-60]; further, the judge properly decided to discredit as self-serving the defendant's allegations that counsel did not adequately consult with him, properly prepare him to testify, or explain all the implications of his decision not to testify [60-61].

INDICTMENT found and returned in the Superior Court Department on February 20, 2004.

The case was tried before *Linda E. Giles,* J., and a motion for a new trial, filed on March 12, 2008, was considered by her.

*Stephen Paul Maidman* for the defendant.

*Michael H. O'Connell*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. In 2006, a Plymouth County jury found the defendant guilty of murder in the first degree by reason of extreme atrocity or cruelty when he ran over his former wife with his vehicle. The defendant appealed. Represented by new counsel, the defendant filed a motion for a new trial alleging constitutionally ineffective assistance of trial counsel. The trial judge denied the motion without a hearing. The defendant appealed. On appeal he argues that the trial judge erred in asking prospective jurors a question concerning domestic violence; in admitting in evidence his unrecorded statement to police and an abuse protection order; and in denying his motion for a required finding of not guilty. He also argues that the judge erred in denying his motion for a new trial. Because we conclude that none of the defendant's claims of error require a reversal of his conviction, and discern no reason to exercise our power pursuant to G. L. c. 278, § 33E, we affirm his conviction.

*Facts.* We present the essential facts the jury were warranted in finding, reserving certain details for our discussion of the issues raised. The defendant and the victim had two children, Joseph, Jr. (Joey), and Sarah, who were twelve and ten years old, respectively, at the time of the murder. Visitation with his children was a source of tension between the defendant and the victim. A neighbor and a friend of the victim testified about the hostility the defendant exhibited toward the victim. From the time the couple separated in 1998, the defendant periodically made remarks about his wife, at times in front of the children, calling her "fucking cunt," "fucking bitch," "lesbian," and "dike." He threatened that he would "get her" and would take the children. He said she "would be sorry" and he would "shoot her." The neighbor testified that tension was so high that eight or nine times he supervised the visitation when the defendant came to pick up the children. A "couple of times" he walked the defendant out to his vehicle to calm him down in front of the children.

On the morning of February 16, 2004, the defendant went to pick his children up at the victim's house in Halifax. He parked his 1993 Ford Explorer Sport (SUV) in the driveway. The SUV was in good working order. Sarah went outside, and as she was

placing certain items inside the SUV, the defendant asked her where the rest of her things were, as she and her brother were going to be spending the night with him. Sarah went inside to tell the victim. Joey then went outside, placed some items in the SUV, and went back inside the house to say goodbye to the family's dog.

The two children were inside the house while the victim went outside to talk to the defendant to tell him that an overnight stay was not part of their agreement.[1] The couple argued. The conversation ended when the victim said that the defendant should not have the children at all because he was being irrational, and she walked away toward the house. The defendant "lost it" and put his SUV in gear, stepped on the gas pedal, and hit her. He then backed up over her. The victim's slacks had tire marks on them.

The children had heard tires screeching and ran outside. Sarah saw the defendant's SUV on top of the victim, as the vehicle backed up slowly. Joey testified that, although the victim was lying on the ground, the defendant was "just standing there." The defendant told Joey to go inside and dial 911. The defendant, who was a registered nurse, knew that the victim's injuries were severe, yet did nothing to help the victim while Joey was inside making the telephone call. When Joey came back outside, the defendant gave him a "CPR mask" that Joey placed on the victim's mouth and blew into until help arrived. The defendant did not assist Joey.

The town's fire chief was the first person to respond to the scene. He testified that there was no one at the house watching to signal him, and he drove past the house at first. When he drove into the driveway, the fire chief saw the two children, who were crying and extremely upset, with the victim. Joey was trying to "perform rescue" on her. The defendant was standing off to the side, leaning against his vehicle. When asked by the fire chief what had happened, the defendant made clear that he did not hit the victim, but that he "ran her over." Tire marks on the

---

[1]At trial, the defendant's niece testified that on the day before the murder, the defendant telephoned her and, in essence, asked her to invite the children to a sleepover at the defendant's house and told her that if she did, she also could stay with him. The defendant told the niece to make it look like the sleepover was her idea. The niece was not able to talk to the children.

asphalt driveway indicated that the SUV had accelerated toward the victim, and there were scuff marks, where dirt, or some other substance, had been rubbed off and transferred to the bumper and hood of the vehicle.

The victim was still alive when she was taken from the scene, but was pronounced dead the next day. The cause of death was blunt trauma to the head, intracranial bleeding, and extremity and skull fractures, including a fractured pelvis. She also had a tear in her bladder.

In a statement he gave to State troopers the day of the incident, the defendant was asked why he did not help the victim. He replied that he could not do it; he could not touch her. He said that the victim hurt him "like the Nazis hurt the Jews" and that he would not walk across the street for her. He stated that the victim was a sociopath who was controlling and manipulative. He claimed that she antagonized him and was always degrading him and toying with people, and that he had kept in control of himself for fourteen years.

The defense was that this was an accident and that there was no proof that the defendant's vehicle actually struck the victim. The defendant called no witnesses, but trial counsel elicited, through cross-examination of the Commonwealth's witnesses, that the defendant also told the police that, although he was very angry at his wife, he was trying to leave but the wheels of his SUV were turned to the right (i.e., toward the victim) when he accelerated; that the Commonwealth's accident reconstruction expert could not say where the point of impact, if any, was between the victim and the SUV; and that all abrasions on the victim were superficial and there were no broken bones, even though if an SUV ran over an individual's extremities, there would be some injuries to them. He emphasized these points in closing argument. He also attacked the credibility and memory of the Commonwealth's witnesses, stating that several of them, including police officials, were liars or were biased against the defendant. He stated that all evidence against the defendant was from "questionable sources," and that the scuff marks on the SUV were not visible on any photographs. He also contended that many people have contentious divorces and it was not proof of murder.

*Voir dire of jurors.* During the voir dire of potential jurors,

the judge asked, over defense objection, "Have you or any member of your immediate family or close personal friend ever been involved in an incident of domestic violence that would cause you to question your ability to be fair and impartial?" The defendant argues that "potential jurors were thereby tainted with prejudice" because the question created the impression that the trial was about domestic violence rather than "an automobile accident."

The judge must examine jurors fully regarding possible bias or prejudice where "it appears that there is a substantial risk that jurors may be influenced by factors extraneous to the evidence presented to them." *Commonwealth* v. *Morales*, 440 Mass. 536, 548 (2003), quoting *Commonwealth* v. *Chandler*, 17 Mass. App. Ct. 1022, 1023 (1984). The scope of a voir dire is in the sound discretion of the trial judge and will be upheld absent a clear showing of abuse of discretion. See *Commonwealth* v. *Lao*, 443 Mass. 770, 776 (2005), *S.C.*, 450 Mass. 215 (2007), quoting *Commonwealth* v. *Lopes*, 440 Mass. 731, 736 (2004).

Here, although the defense theory was that the victim's death was an accident, the Commonwealth's evidence supported an allegation that the victim's death was an incident of domestic violence. Except for his unsupported assertions of juror taint and prejudice, the defendant has not shown how excluding jurors who may have been sensitive to the issue of domestic violence was an abuse of discretion, especially where the question reasonably could be seen as benefiting the defendant. There was no abuse of discretion.

*Defendant's statement.* At trial, two State troopers testified to the defendant's statement to them on the day of the murder, where he admitted that he was angry, and that he put his SUV in gear, stepped on the gas pedal, ran over the victim, and then backed over her. The defendant's statement to police was not recorded. The defendant argues that this court should rule that it was unconstitutional to admit his unrecorded statement as evidence at trial. There was no error.

In *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 441-442 (2004), this court fully discussed, and rejected, an argument that recording of interrogations should be constitutionally required. Instead we mandated a jury instruction, if requested by the

defendant, "advising that the State's highest court has expressed a preference that such interrogations be recorded . . . and cautioning the jury that [with any unrecorded interrogation] before them, they should weigh evidence of the defendant's alleged statement with great caution and care." *Id.* at 447-448. That instruction was given in full to the jury here at the time the first trooper testified, and the jury were reminded of all instructions concerning the defendant's statements when the second trooper took the stand immediately following the first trooper. The judge repeated the instruction in her final charge to the jury. We decline the defendant's invitation to revisit our *DiGiambattista* decision.[2]

*Abuse prevention order.* At trial, over objection, the judge allowed the Commonwealth to introduce in evidence an abuse prevention order that the victim had obtained against the defendant some five years before the murder. The judge gave a limiting instruction, informing the jury that the order was being admitted for purposes of the nature and context of the relationship between the defendant and the victim, and the defendant's intent and motive. She also told the jury that they could not use it as proof of the murder or of the defendant's bad character. The judge repeated this instruction in her final charge to the jury. The defendant argues, in cursory fashion, that, because the order was stale, its admission was a violation of his right to fair trial and due process under the Federal and State Constitutions.

Evidence that a victim has obtained an abuse prevention order against a defendant is admissible to demonstrate the existence of a hostile relationship, as the relationship may be relevant to the defendant's motive to kill. *Commonwealth* v. *Sarourt Nom*, 426 Mass. 152, 160 (1997), and cases cited. The admission of such evidence is left to the sound discretion of the trial judge, but such evidence should not be admitted if it relates to events that are too remote in time from the killing. *Commonwealth* v. *Gil*, 393 Mass. 204, 216 (1984). See, e.g., *Common-*

---

[2] We note that trial counsel emphasized the lack of a recording in his cross-examination of the two troopers and in his closing argument, where he identified the potential problems with an unrecorded statement, including that one trooper's recollection was folded into the second trooper's report and thus he had no independent memory of what the defendant said. Counsel stated that, for all the jury knew, the defendant could have said he did not intend to kill the victim.

*wealth* v. *Abbott*, 130 Mass. 472, 475 (1881) (evidence offered of animosity between defendant and wife occurring three years before wife's murder too remote to be probative). "However, evidence of a continuing animosity between a defendant and a victim spouse, existing closer in time to the victim's death, may render the earlier evidence relevant on the issue of the defendant's motive to kill." *Commonwealth* v. *Gil, supra.* See *Commonwealth* v. *Rosenthal*, 432 Mass. 124, 126, 128 (2000) (evidence of abuse years before killing not too remote, where there was evidence of hostility toward victim during months before murder).

Here the jury had the defendant's own statement that for fourteen years his relationship with the victim was acrimonious and it continued until the day of the murder, when he "lost it." However, we need not decide whether it was error to admit the abuse prevention order because, even if it were, we conclude that the error would have no, or only slight, effect on the jury where the order was cumulative of other evidence of hostility, including the testimony of the neighbor and the victim's friend, as well as the defendant's statement to the State troopers. There was no prejudice. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994) (preserved nonconstitutional errors reviewed under non-prejudicial error standard); *Commonwealth* v. *Nardone*, 406 Mass. 123, 129 (1989) (no likelihood of miscarriage of justice where evidence of domestic abuse cumulative of other properly admitted evidence).

*Denial of motion for a required finding.* The defendant argues that the judge erred in denying his oral motion for a required finding of not guilty. He claims that there was insufficient evidence to convict him of murder in the first degree on the theory of extreme atrocity or cruelty. There was no error.

We review the denial of a motion for a required finding of not guilty to determine "whether the evidence viewed in the light most favorable to the Commonwealth could have 'satisfied a rational trier of fact' of each element of the crimes charged beyond a reasonable doubt." *Commonwealth* v. *Conkey*, 443 Mass. 60, 72 (2004), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Where the evidence is largely circumstantial, it is not essential that the inferences drawn should

be the only necessary inferences. It is enough that the inferences "be reasonable and possible." *Commonwealth* v. *Conkey*, *supra*, quoting *Commonwealth* v. *Lodge*, 431 Mass. 461, 465 (2000). If conflicting inferences are possible from the evidence, "it is for the jury to determine where the truth lies." *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981), quoting *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 (1978). To show that a murder was committed with extreme atrocity or cruelty, the Commonwealth must prove that the evidence satisfies one of the factors set forth in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983).[3] See *Commonwealth* v. *Anderson*, 445 Mass. 195, 202 (2005) (jury need only find "one or more" of the *Cunneen* factors).

Here there was ample evidence to find that one or more of the *Cunneen* factors was present (e.g., indifference to victim's suffering; instrument employed by defendant). The defendant was angry at the victim, put his SUV in gear, and stepped on the gas pedal with enough force to screech the tires and leave acceleration marks. He struck the victim with the vehicle and then backed over her. After he had struck the victim, she was still alive, but helpless. Even though he was a registered nurse, the defendant stood by, not offering any aid. Instead, he placed responsibility for calling 911 for emergency services and for keeping the mortally injured victim alive until help arrived, on his son, a twelve year old boy.

*Motion for a new trial.* In his motion for a new trial the defendant argued that he received ineffective assistance of trial counsel, alleging that trial counsel did not consult adequately with him, properly prepare him to testify, explain all the implications of his decision not to testify at trial, or fully cross-examine the Commonwealth's witnesses, including the two State troopers who interviewed him on the day of the murder. The defendant also

---

[3] These factors include (1) indifference to and taking pleasure in the victim's suffering; (2) consciousness and degree of suffering of the victim; (3) extent of physical injuries to the victim; (4) the number of blows delivered by the defendant to the victim; (5) the manner and degree of force with which the blows were delivered; (6) the instrument or weapon employed by the defendant; and (7) the disproportion between the means needed to cause death and those employed. *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983) (*Cunneen* factors).

claimed that his waiver of his right to testify was not knowing and intelligent. In support of his contentions, the defendant submitted a 217-paragraph affidavit. The defendant also filed a motion for an evidentiary hearing. Trial counsel did not supply an affidavit addressing the defendant's claims of ineffective assistance of counsel.

The judge, who also was the trial judge, denied the motion without a hearing.[4] She found that the defendant's affidavit was self-serving and that it was speculative that an affidavit from trial counsel would be helpful to the defendant's motion. Relying on her knowledge of trial counsel's efforts, the judge did not credit the defendant's claim that trial counsel did not "consult with, advise, and prepare the defendant thoroughly before and during trial relative to all issues, including [the defendant's] right to testify." She noted that the right to testify is rarely exercised in cases such as this "where the defendant would be so susceptible to impeachment on account of his animus towards the victim." Relying on her knowledge of what occurred at trial, she concluded that trial counsel's cross-examination of the State troopers was "more than adequate and appropriate." The judge did not credit the defendant's "bald assertion" that the troopers "engaged in abusive interrogation techniques." She also concluded that the defendant's waiver of his right to testify was valid, stating that it was made after a colloquy the judge engaged in with the defendant and after his adequate consultation with trial counsel.

On appeal, the defendant claims that the judge's conclusion regarding the ineffective assistance of counsel issues he raised was error and that the judge should have granted his motion for an evidentiary hearing. He claims that, but for the ineffective assistance of counsel, "a radically different picture" of the events "would likely have emerged." There was no error.

"The decision to grant a motion for a new trial rests soundly within the judge's discretion and 'will not be reversed unless it is manifestly unjust or . . . the trial was infected with prejudicial constitutional error.' *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999). Moreover, we give 'special deference to the deci-

---

[4]The record does not reflect the judge's denial of the motion for an evidentiary hearing.

sions of a judge who was, as here, the trial judge.' *Commonwealth* v. *Murphy*, 442 Mass. 485, 499 (2004)." *Commonwealth* v. *Espada*, 450 Mass. 687, 697 (2008). Where the judge was the trial judge, she may apply knowledge of the conduct of the trial in making a decision about the motion. *Commonwealth* v. *Grace*, 370 Mass. 746, 752-753 (1976), and cases cited. "Where the denial of a motion for a new trial 'is considered . . . in conjunction with a defendant's direct appeal from a conviction of murder in the first degree,' we must determine whether, under G. L. c. 278, § 33E, there was a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Morgan*, 449 Mass. 343, 353 (2007), quoting *Commonwealth* v. *Hill*, 432 Mass. 704, 710 n.14 (2000). In considering a claim of ineffective assistance of counsel, "we need not focus on the adequacy of trial counsel's performance . . . [but] shall consider whether there was error in the course of the trial . . . and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). Tactical decisions by an attorney are error only if they were "manifestly unreasonable when made." *Commonwealth* v. *Frank*, 433 Mass. 185, 190 (2001), quoting *Commonwealth* v. *Coonan*, 428 Mass. 823, 827 (1999).

We begin by addressing the defendant's claim that his trial counsel should have submitted an affidavit concerning the defendant's allegation of ineffective assistance of counsel. The defendant notes that, in deciding the ineffective assistance of counsel claim, the judge mentioned the absence of an affidavit from trial counsel. According to an affidavit filed by appellate counsel to accompany the defendant's motion, appellate counsel sent a proposed affidavit to trial counsel and asked him to sign or to correct anything misleading or inaccurate. Appellate counsel avers that he received a single sentence reply from trial counsel that stated, "I am sorry but I cannot help you by signing the affidavit because the contents of the affidavit are inaccurate." Trial counsel did not answer appellate counsel's follow-up request that the inaccuracies be identified.[5]

The defendant argues that this court should create a rule that

---

[5]Appellate counsel avers that, in that follow-up, he stated, in pertinent part: "You can either change the affidavit which I wrote for you so as to make it,

an attorney has a duty to provide an affidavit to accompany a defendant's motion for a new trial. He bases his request on the constitutional right to effective representation; Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998); and the fiduciary duty of an attorney to his client under Massachusetts common law. We decline to create such a rule.[6] Moreover, we agree with the judge that even if there were a duty to provide an affidavit, it is pure speculation that the affidavit would have been helpful. Given trial counsel's response that stated, without qualification, that the "contents" of the proposed affidavit were not accurate, his refusal to be more specific (and thus contradict the defendant) reasonably can be seen as fulfilling a duty to the defendant, and in any event, there was no such ineffective assistance of counsel that would require a new trial.

In his motion for a new trial, the defendant presented a long list of quarrels he had with the breadth and scope of the cross-examination, claiming that, because trial counsel failed adequately to consult with him, he failed effectively to cross-examine Commonwealth witnesses, including the two State troopers who testified to the statement the defendant made to them on the day of the murder. Concerning the troopers, he stated that they were misleading or lying about what he said to them and that they used abusive tactics during his interview. The judge did not abuse her discretion in discrediting the defendant's "bald assertion" that the troopers "engaged in abusive interrogation techniques" or that they were lying. She also properly relied on her knowledge of the cross-examination to conclude that trial counsel's performance was "more than adequate and appropriate."

Here, the record shows that trial counsel elicited from one

---

in your view, completely accurate, or you can write your own affidavit addressing each of the points I presented in the affidavit which I initially prepared for your signature. How you go about it is your call. I just need an affidavit from you addressing the factual issues raised in the motion for new trial. . . ."

[6]An attorney's obligations to a former client are set forth in Mass. R. Prof. C. 1.16 (e) (1) and (2), 426 Mass. 1369 (1998), and include providing the former client's "papers, documents and other materials" as well as copies of pleadings and other papers filed with the court or served on another party. Comment 9 states, in pertinent part: "Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client." Given our conclusion on the facts in this case, we need not address whether in some circumstances this rule may create a duty to cooperate with new counsel by providing an affidavit.

trooper that she did not record the defendant's statement and that she was relying on her memory. Counsel implied that the trooper's memory was selective and faulty because, on direct examination, she had to consult her notes from the interview five times, and because she selectively quoted the defendant in her notes. He also asked her whether the defendant told her that he was just trying to leave when the victim was struck, which the trooper denied. On recross-examination, the trooper admitted that the defendant said that he never "righted" the wheels of his vehicle. Counsel emphasized the lack of a recording of the defendant's statement. In his cross-examination of the other trooper, trial counsel stressed that that trooper was present for only about five minutes of the defendant's interview and that he never took any notes. Trial counsel emphasized these points in his closing argument. See note 2, *supra.*

Concerning the defendant's claim that his trial counsel did not elicit a number of "facts" from other Commonwealth witnesses, our review of the record shows that, during his cross-examination, trial counsel, in essence, touched on all the issues the defendant raises, albeit in different form than the defendant would have liked. These include whether the victim's death was an accident, whether Sarah's memory that the SUV was on her mother was accurate, whether the SUV actually backed over the victim, whether the defendant flagged down the emergency vehicles, and the reasons the defendant stood back while emergency personnel tended to her.[7] As the judge noted, "the

---

[7] There are three other facts from the defendant's affidavit that he contends should have been brought out by trial counsel: that the victim angered him on the day of the murder; that at first he was too shocked to help the victim; and that he placed the CPR mask on the victim and instructed his son, who had learned CPR in the Boy Scouts, on the proper use. It is not clear how the jury being made aware that the victim angered the defendant, which in any event was brought out by the defendant's statement to police, would assist his defense, as it had the equally likely potential to focus more attention on the antagonistic relationship he had with the victim. Moreover, there is no substantial likelihood of a miscarriage of justice concerning the other two issues because, even if these statements are not merely self serving and trial counsel should have made these points, the jury were warranted in finding him guilty based on extreme atrocity or cruelty based solely on the instrument he employed to murder the victim, an SUV that weighed, according to the defendant, some two tons. See *Commonwealth* v. *Anderson*, 445 Mass. 195, 202 (2005) (jury need find only one of the *Cunneen* factors).

guaranty of the right to counsel is not an assurance to defendants of brilliant representation or one free of mistakes." *Commonwealth* v. *Arriaga*, 438 Mass. 556, 582-583 (2003), quoting *Commonwealth* v. *LeBlanc*, 364 Mass. 1, 13-14 (1973). The ability of trial counsel to elicit this information on cross-examination also belies the defendant's contention that trial counsel did not know the defendant's side of the story and that the trial judge could not possibly be able to decide whether trial counsel's consultation with the defendant was adequate. There was no error.

Concerning the defendant's claims in his affidavit that counsel did not adequately consult with the defendant, properly prepare him to testify, or explain all the implications of his decision not to testify, the judge's decision to discredit these assertions as self-serving was proper. *Commonwealth* v. *Rebello*, 450 Mass. 118, 130 (2007). Moreover, she properly relied on her observations at trial to reject the defendant's contention that trial counsel did not prepare him thoroughly before and during trial relative to all issues, including his right to testify.

In his affidavit, the defendant admits that, both before and during trial, his counsel "emphatically told me his view of the risks I faced if I testified . . . that I was incapable of focusing on anything other than my troubled relationship with [my former wife] . . . he was afraid I would disparage [her] in front of the jury and blame her for my problems . . . and if I vilified [her] the jury would quickly return a guilty verdict." The defendant has not shown how this advice is manifestly unreasonable, and trial counsel's ability to form this opinion undermines the defendant's contention that he did not make an adequate effort to prepare the defendant to testify. The defendant does not argue that there is no basis for trial counsel's advice. Indeed, part of the defendant's affidavit speaks to his belief that the victim had antagonized him from the time they divorced up to the day of the murder. The defendant argues, instead, that he remained unaware that the consequence of not testifying was that the jury would not hear his side of the story. We also note that the judge, the defendant, and trial counsel were aware that, if the defendant testified to anything that would suggest that it would be unfair to exclude

evidence of the victim's state of mind (such as that he engaged in self-defense or that he had a good relationship with the victim), the Commonwealth would be allowed to call a rebuttal witness who would testify that the victim told her that she was afraid of the defendant. It was not manifestly unreasonable for the attorney to have believed that, if the defendant was incapable of focusing on anything but his relationship with the victim, the risk that he might open the door to such rebuttal was real. There was no error.

Concerning the defendant's contention that his trial counsel failed to explain all the implications of not testifying and that his decision not to testify was not knowing and voluntary, the record supports the judge's conclusion that the defendant's waiver of his right to testify was knowing and intelligent. During the colloquy, the defendant stated that he was not under the influence of medications or mental illness or defect that could affect his decision. He affirmed that his decision not to testify was made after adequate consultation with his counsel and was his own decision. She also noted that the defendant expressed confidence in his attorney. Indeed, the record shows that the judge called a brief recess so that the defendant could confer again with his attorney about his decision and that, afterward, the defendant stated that he accepted trial counsel's advice not to testify, that trial counsel was acting "[m]ost certainly" in his best interests, and that counsel "has presented the trial and the case, my life."

Given our conclusion that the judge did not err in denying the defendant's motion for a new trial, we conclude that she was warranted in not granting his motion for an evidentiary hearing on the motion. *Commonwealth* v. *Britto*, 433 Mass. 596, 608 (2001) (judge properly decided motion for new trial without evidentiary hearing where record supports that no substantial issues existed).

*Review pursuant to G. L. c. 278, § 33E.* The defendant asks us to order a new trial pursuant to our power under G. L. c. 278, § 33E. He argues that the prejudice that resulted from his constitutionally deficient attorney creates an "overwhelming likelihood" that there was a miscarriage of justice. We have discussed and rejected the defendant's claim of ineffective assistance of

counsel. We also have reviewed the entire record and discern no reason to exercise our power to reduce the verdict or order a new trial.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*