## COMMONWEALTH *vs.* SETH ANDRADE.

Bristol. May 9, 2014. - June 25, 2014.

Present: IRELAND, C.J., SPINA, CORDY, DUFFLY, & LENK, JJ.

*Homicide. Practice, Criminal,* Capital case, Jury and jurors, Voir dire, Examination of jurors, Argument by prosecutor. *Witness,* Credibility.

At a murder trial, the judge's questioning of the jury venire concerning the effect, if any, of the absence of eyewitness testimony in the Commonwealth's case did not amount to an abuse of discretion or deny the defendant his right to a fair trial by an impartial jury, where the questioning sought to ensure that the jury would be able to convict if the Commonwealth proved its case beyond a reasonable doubt with circumstantial evidence and that the nature of the evidence presented would not prevent the jury from fairly evaluating the Commonwealth's case; and where the judge properly instructed the jury regarding their evaluation of direct and circumstantial evidence. [546-549]

There was no merit to a criminal defendant's argument that the prosecutor's redirect examination of an immunized witness at trial, during which the prosecutor properly attempted to rebut the plain implication of defense counsel's questioning that the witness's testimony was false and had been concocted to curry favor with the Commonwealth, either invaded the province of the jury or constituted improper vouching. [549-551]

At a murder trial, the prosecutor, in closing argument, did not misstate the medical examiner's testimony but, rather, argued reasonable inferences from the evidence. [551-552]

INDICTMENTS found and returned in the Superior Court Department on April 1, 2010.

The cases were tried before *Barbara A. Dortch-Okara,* J.

*Cathryn A. Neaves* for the defendant.

*Tara L. Blackman,* Assistant District Attorney, for the Commonwealth.

IRELAND, C.J. In April, 2012, a jury convicted the defendant, Seth Andrade, of murder in the first degree on the theory of deliberate premeditation, and of unlawful possession of a firearm. Represented by new counsel on appeal, the defendant argues error in (1) the judge's questioning of members of the

jury venire concerning the effect, if any, of the absence of eyewitness testimony to the murder in the Commonwealth's case; (2) the redirect examination of an immunized witness; and (3) the prosecutor's closing argument. We affirm the defendant's convictions and discern no basis to exercise our authority pursuant to G. L. c. 278, § 33E.

1. *Background.* Based on the Commonwealth's evidence, the jury could have found the following facts. Shortly after 8:30 P.M., on January 20, 2010, the victim was shot and killed in the backyard at 192 Purchase Street in New Bedford. The victim died as a result of two gunshot wounds to the head, with injuries to his skull and brain. One bullet entered the right side of the victim's face about one-half inch to midline on his nose and traveled upwards, front to back and lodging underneath the parietal scalp of the right side of his head. The presence of stippling at the site of the entrance to that wound indicated that the victim had been shot at from an intermediate range, specifically, from a distance of eighteen to twenty-four inches. The second bullet entered the back of the victim's head on the right side, traveled down through his skull, and exited on the left side of his face, just below his earlobe. The medical examiner could not determine which wound was first inflicted, but both wounds were fatal and would have caused a loss of consciousness within seconds.

At the time of the shooting, nearby residents heard loud bangs, sounding like "pops" or firecrackers. Two young men, appearing to be in their late teens, were seen leaving the area. One was wearing a brown canvas jacket and had a hood over his head; the other was wearing a hooded sweatshirt and a blue "puffy" down jacket.

The murder weapon was never found. Police, however, found a .380 caliber discharged cartridge casing and one spent projectile at the scene. A firearms identification expert gave his opinion, based on his microscopic examination of the spent projectile recovered at the scene and the projectile recovered at the victim's autopsy, that the bullets had been fired from the same weapon.

At approximately 7:45 P.M. on the day of the murder, the victim had attempted to purchase marijuana from a family friend and his supplier. The victim was accompanied by three men

who wore hooded sweatshirts. The victim got the money for the drugs from one of these men. The money, however, was not real, and the supplier left with the drugs.

The victim and the men he had been with also left. They were picked up by a taxicab at 8:01 P.M. and were dropped off near the residence of Edwin Jorge.[1] Shortly thereafter, at 8:20 P.M., a taxicab returned to the area near Edwin's home and drove three men, including the victim, to Acushnet Avenue, which is behind Purchase Street.[2] The telephone call to the taxicab company for this ride was made from the victim's cellular telephone.

At about midnight, Edwin received a telephone call from his brother, Jordan, and went to the residence of Tyrone Solano. There he picked up Jordan, Solano, and the defendant, and drove them to his mother's home in Fall River. When Edwin asked what was going on, the defendant said, "Drop it."

About one week later, at Edwin's mother's home, Edwin had a conversation with the defendant about the victim's death. The defendant stated that the victim "did niggers dirty, so he had to go." The defendant told Edwin that, when the victim was looking at his telephone, he had "popped him," and then "popped him again." Edwin showed the jury how the defendant demonstrated the manner in which he shot the victim, pointing straight out for the first shot and then pointing downward for the second shot. The defendant told Edwin that they had disposed of all the evidence with the exception of his jacket, which he had left at Solano's home.

Pursuant to a search warrant, police recovered the defendant's brown jacket at Solano's home. Subsequent forensic testing on the jacket revealed gunshot residue on the lower sleeves and cuffs of the jacket, as well as inside the right front jacket pocket.

---

[1] Edwin Jorge testified that, when he was putting his daughter to bed, his brother Jordan arrived at his home with his girl friend. They stayed about fifteen to twenty minutes and then left. Jordan's girl friend testified that, at about 8 P.M., Jordan telephoned her to pick him up at Edwin's home. She did so, and the two went to her grandmother's house to watch television until about 10 P.M., when she drove him to a store. Jordan showed up at her home at approximately 11 P.M., but left around midnight after answering a telephone call.

[2] The day after the victim's murder, the taxicab driver identified the victim from a photograph as having been one of the men in the taxicab.

On February 2, after receiving the Miranda warnings, the defendant agreed to speak with police. The interview was recorded. The defendant initially denied that he was in the backyard of 192 Purchase Street when the victim was killed. Later, however, he admitted to being there and to wearing a brown jacket. He recounted that the victim had been trying to purchase marijuana from someone at that address when a person came into the yard and shot him. The defendant described the second shot as the "finishing" shot. When confronted with the officers' assertion that gunshot residue had been found on his jacket, the defendant stated that he went shooting on occasion at a relative's home in Dartmouth.[3]

The defendant did not testify. The theory of the defense was that someone else had shot the victim. He called one witness, a forensic chemist he had privately retained, who testified that the negative control used by the Commonwealth in its gunshot residue testing had been contaminated. The defense also attacked the credibility of Edwin, arguing that the jury should not "believe a thing [he] says."

2. *Jury voir dire.* On the first day of trial, the prosecutor filed proposed individual voir dire questions concerning the effect of the absence of eyewitness testimony in the Commonwealth's case. Because no objection was made, the judge asked each potential juror some variation of the following question:

> "In this case, you may not hear any testimony from an eyewitness to the actual shooting of [the victim]. In other words, the Commonwealth's case will be based largely on testimony and forensic evidence that's often referred to as circumstantial evidence. Circumstantial evidence is proof of a chain of circumstances from which you can infer that a fact exists. Would the fact that you will not hear eyewitness testimony to the actual shooting in and of itself prevent you from finding the defendant guilty if the Commonwealth, through circumstantial evidence, is able to

---

[3]This relative testified that she had not seen the defendant at her home in seven or eight years, and had never heard gunfire near her property or seen evidence of guns being fired at the property. Police also searched the property and found no evidence of shell casings, ammunition, or weapons.

convince you beyond a reasonable doubt of the defendant's guilt?"[4]

All thirteen potential jurors who answered this question affirmatively or ambiguously were dismissed for cause.

The defendant contends that the question, its variants, and additional explanations to the jury venire denied him the right to a fair trial by an impartial jury as guaranteed by the Sixth Amendment to the United States Constitution and by art. 12 of the Massachusetts Declaration of Rights. He also argues that the questions invaded the province of the jury and had the effect of selecting a jury that was predisposed to convicting the defendant based on the evidence the Commonwealth would introduce at trial. We review to determine whether there was an abuse of discretion, see *Commonwealth* v. *Gray*, 465 Mass. 330, 338, cert. denied, 134 S. Ct. 628 (2013), and whether any such abuse, because the defendant did not object below, resulted in a substantial likelihood of a miscarriage of justice, see *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992).

"Article 12 of the Declaration of Rights of the Massachusetts Constitution and the Sixth Amendment to the United States Constitution, applied to the States through the due process clause of the Fourteenth Amendment, guarantee the right of a criminal defendant to a trial by an impartial jury." *Commonwealth* v. *McCowen*, 458 Mass. 461, 494 (2010), quoting *Commonwealth* v. *Vann Long*, 419 Mass. 798, 802 (1995). "We afford a trial judge a large degree of discretion in the jury selection process." *Commonwealth* v. *Vann Long, supra* at 803. The judge's duty is to "examine jurors fully regarding possible bias or prejudice where 'it appears that there is a substantial risk that jurors may be influenced by factors extraneous to the evidence presented to them.' " *Commonwealth* v. *Garuti*, 454 Mass. 48, 52 (2009), quoting *Commonwealth* v. *Morales*, 440 Mass. 536, 548 (2003). "In deciding juror impartiality, it is sufficient for the judge to 'determine whether jurors [can] set aside their own opinions,

---

[4]A second question on the issue also was asked of jurors who were not excused based on their answer to the first question: "Would you be able to follow my instructions that there is no difference in the probative value between direct and circumstantial evidence, and that circumstantial evidence may be competent to establish guilt beyond a reasonable doubt?"

[properly] weigh the evidence . . . and follow the instructions of the judge.' " *Commonwealth* v. *Perez*, 460 Mass. 683, 688-689 (2011), quoting *Commonwealth* v. *Bryant*, 447 Mass. 494, 501 (2006).

"[A] determination by the judge that a jury are impartial will not be overturned on appeal in the absence of a clear showing of abuse of discretion or that the finding was clearly erroneous." *Commonwealth* v. *Lopes*, 440 Mass. 731, 736 (2004). "The goal of permitting questioning of prospective jurors is to provide a defendant with a competent, fair, and unbiased jury. A trial judge, who is aware of the facts of a particular case and can observe firsthand the demeanor of each prospective juror, is in the best position to determine what questions are necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially." *Id.*

Previously, we have specifically addressed (and rejected) constitutional challenges to questions to the jury venire concerning the absence of scientific evidence in the Commonwealth's case and have cautioned that such questions "should be posed sparingly." *Commonwealth* v. *Gray*, 465 Mass. at 339. We have declined to conclude, however, that posing such questions amounted to an abuse of discretion in circumstances where the questions, construed with the judge's instructions on the subject, "did not amount to a command to ignore the lack of scientific evidence." *Id.* at 341. See *Commonwealth* v. *Perez*, 460 Mass. at 691. Also, in determining whether an abuse of discretion had arisen, we considered whether the questions committed the jury to a verdict in advance or had "the effect of identifying and selecting jurors who were predisposed to convicting the defendant based on evidence the Commonwealth would present." *Id.* These considerations are instructive here.

In this case, the questions were not necessary, particularly in view of the standard jury instructions on direct and circumstantial evidence. The judge, however, did not abuse her discretion in posing them and did not violate the defendant's constitutional rights. The questions did not amount to a command to ignore the lack of eyewitness testimony and to overlook the fact that the Commonwealth had not marshaled direct evidence of the defendant's guilt. Rather, the questions sought to ensure that the

jury would be able to convict where the Commonwealth proved its case beyond a reasonable doubt with circumstantial evidence, and that the nature of the type of evidence presented in the case would not prevent the jury from fairly evaluating the Commonwealth's case.[5] See *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 556 (1990) (judge correctly instructed to jury that circumstantial evidence is not "some sort of inferior evidence"); *Commonwealth* v. *Cinelli*, 389 Mass. 197, 203 n.9, cert. denied, 464 U.S. 860 (1983), and cases cited (circumstantial evidence alone may suffice to establish guilt beyond reasonable doubt). Also, simply because a member of the jury venire answers that he or she is capable of returning a guilty verdict in the absence of eyewitness testimony does not mean that he or she will necessarily do so. Finally, the questions did not skew the jury that ultimately were selected toward conviction. The judge properly instructed the jury about the differences between direct and circumstantial evidence, that whether the Commonwealth's case was based solely on circumstantial evidence was for the jury to decide, and that whether the evidence is direct or circumstantial, the Commonwealth must prove the defendant guilty beyond a reasonable doubt from all of the evidence in the case. See *Commonwealth* v. *Pires*, 389 Mass. 657, 664 (1983); *Commonwealth* v. *Liakos*, 12 Mass. App. Ct. 57, 60 (1981). The jury are presumed to follow the judge's instructions. *Commonwealth* v. *Gonzalez*, 465 Mass. 672, 681 (2013).

3. *Redirect examination of immunized witness.* Edwin, who at trial recounted various incriminating statements made by the defendant following the victim's death, testified pursuant to a grant of immunity. During his cross-examination, defense counsel elicited that Edwin initially had lied to police and to the grand jury, and suggested that he was "giv[ing] [a] story" at trial. Defense counsel also suggested that Edwin had fabricated his

---

[5]Although we conclude that there was no abuse of discretion or constitutional violation in this case, we discourage the practice of posing the type of question challenged here, as many cases hinge on circumstantial evidence alone and the standard jury instructions cover the issue. In the rare case that inquiry must be made of a potential juror on the subject, the appropriate question that the judge should ask is whether the juror is willing to follow an instruction that guilt may be established by circumstantial evidence if proved beyond a reasonable doubt.

trial testimony to curry favor with the Commonwealth in order to obtain favorable treatment on pending drug charges and to receive certain financial benefits, such as hotel lodging and relocation costs. During Edwin's redirect examination, the prosecutor, over the defendant's objection, asked Edwin whether he "told the truth to the jury today about what [the defendant] told [him] about the murder of [the victim]?" Edwin replied affirmatively. The defendant argues that the prosecutor's question invaded the province of the jury to determine Edwin's credibility and improperly allowed the Commonwealth to vouch for his credibility. We disagree.

When viewed in context, the prosecutor was not asking Edwin to assess the credibility of his own testimony. Rather, he was attempting on redirect examination to rebut the plain implication of defense counsel's questions posed during cross-examination that Edwin's testimony was false and had been concocted to curry favor with the Commonwealth. The question was proper rehabilitation. See *Commonwealth* v. *Kebreau*, 454 Mass. 287, 299 (2009) ("Once the defendant opened the door on cross-examination, the Commonwealth was entitled to rehabilitate the witness").

Nor did the question amount to improper vouching by the prosecutor. "Improper vouching occurs if 'an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury.' " *Commonwealth* v. *Ortega*, 441 Mass. 170, 181 (2004), quoting *Commonwealth* v. *Wilson*, 427 Mass. 336, 352 (1998). In asking the question, the prosecutor did not express a personal belief in Edwin's credibility. It should be noted that he did not even reference the immunity agreement or Edwin's obligations thereunder. Further, the prosecutor did not suggest that he had any independent knowledge about the veracity of Edwin's testimony. While the question did not present a situation identical to that in *Commonwealth* v. *Ciampa*, 406 Mass. 257 (1989), we note that the question appropriately was reserved for Edwin's redirect examination. Cf. *id.* at 264 (where witness testifies under plea agreement, "[a]ny attempt at bolstering the witness by questions concerning his obligation to tell the truth should await redirect examination" and are proper only after

defendant has attempted to impeach witness's credibility by showing witness struck deal with prosecution to obtain favorable treatment). Also, in her final charge, the judge instructed the jury in accordance with *Ciampa* that, in assessing Edwin's testimony, they "may take the immunity or the deals given to [him] into consideration in assessing [his] credibility" and should examine his testimony "with particular care." She further properly instructed that the "the Government does not know whether a particular witness is telling the truth." See *Commonwealth* v. *Washington*, 459 Mass. 32, 44 n.21 (2011). There was no error. See *Commonwealth* v. *Koumaris*, 440 Mass. 405, 414-415 (2003) (prosecutor's argument in closing that witness "told you the truth" while testifying not improper vouching where defense counsel put witness's credibility at issue during cross-examination and closing argument).

4. *Prosecutor's closing argument.* Referring to the defendant's interview with police when he spoke of a "finishing" shot, the prosecutor argued as follows:

> "Who knows that the second shot was in fact the finishing one, ladies and gentlemen? Well, Dr. Cummings knows. Excuse me. Anyone who's heard Dr. Cummings testify could tell you that the second shot was the finishing shot. Which shot is the second shot, ladies and gentlemen? [The victim] is found [lying] on his back. The first bullet's through here, goes through flat, come out on the other side. The other bullet is straight in up and ends up in the top of his head. Okay?

> "Edwin Jorge described which one was the finishing shot. That second one when he stood over him and pointed down and put the bullet in right here, and it went up. He stood at his feet, shot in his face, right up into his head."

The defendant contends that in so arguing, the prosecutor improperly suggested to the jury that the medical examiner knew the order of the victim's wounds and then used that misstatement of evidence to improperly bolster Edwin's testimony concerning the defendant's demonstration to him of how the victim had been shot. Because the defendant objected to the argument at trial, we review for prejudicial error. *Commonwealth*

v. *Johnson*, 463 Mass. 95, 112 (2012). We conclude that there was none here.

"Remarks made during closing arguments are considered in context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." *Commonwealth* v. *Whitman*, 453 Mass. 331, 343 (2009), citing *Commonwealth* v. *O'Connell*, 432 Mass. 657, 659 (2000). Here, the prosecutor did not misstate the medical examiner's testimony. Rather, he immediately corrected himself and asked the jury to draw an inference concerning the order of the wounds from the medical examiner's testimony viewed in context with the defendant's statements to police and to Edwin. Where the medical examiner could not state in what order the gunshot wounds had been inflicted, and the defendant described a "finishing" shot to police and gave a demonstration of how the shooting had occurred to Edwin, the prosecutor permissibly asked the jury to make an inference based on this evidence. See *Commonwealth* v. *Colon*, 449 Mass. 207, 224-225, cert. denied, 552 U.S. 1079 (2007), quoting *Commonwealth* v. *Freeman*, 430 Mass. 111, 118 (1999) ("Arguments based on testimony submitted at trial . . . are proper"); *Commonwealth* v. *Guy*, 441 Mass. 96, 110 (2004), citing *Commonwealth* v. *Stote*, 433 Mass. 19, 28 (2000) ("Prosecutors must limit the scope of their closing arguments to facts in evidence and the fair inferences that may be drawn therefrom"). Thus, there was no "misstatement" of the medical examiner's testimony used to bolster Edwin's testimony concerning the defendant's demonstration to him of how the victim had been shot. This argument, too, was based on reasonable inferences from the evidence. The defendant's objection to this portion of the prosecutor's closing argument was correctly overruled.

5. *Relief pursuant to G. L. c. 278, § 33E.* As is our duty, we have examined the record pursuant to G. L. c. 278, § 33E, and discern no basis on which to grant the defendant relief.

*Judgments affirmed.*