NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-821

COMMONWEALTH

vs.

BRUNO LOPES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Superior Court, a jury found the defendant, Bruno Lopes, guilty of unlawful possession of a firearm, G. L. c. 269, § 10 (a), and attempted assault and battery by discharge of a firearm, G. L. c. 265, § 15F. Three months later, the trial judge granted the defendant's postconviction motion for relief pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), and set aside the verdicts after concluding that the evidence was not sufficient as to both indictments. The Commonwealth appealed, and a panel of this court reversed and reinstated the verdicts in an unpublished memorandum and order. A single justice of this court stayed the defendant's appeal from his convictions pending

a decision in Commonwealth v. Guardado, 491 Mass. 666 (Guardado I), S.C., 493 Mass. 1 (2023) (Guardado II), cert. denied, 144 S. Ct. 2683 (2024).  After Guardado II issued, this court extended the stay pending a disposition of the defendant's motion for a new trial on the conviction of unlawful possession of a firearm. The Superior Court allowed the defendant's motion on that charge, and the defendant pleaded guilty.  Now, the defendant appeals from his conviction of attempted assault and battery by discharge of a firearm.  We affirm.

Background.  On May 14, 2018, in the Temple Landing housing development in New Bedford, two pedestrians in a group of four fired gunshots at a passing car.  When police arrived at the scene, they found six spent .22 caliber shell casings.  The police initially retrieved footage from four surveillance videos from Temple Landing.

Footage from two of these videos proved to be particularly significant.  One video recording showed the movements of the suspects just before the shooting (Cedar Street video) and a second video recording showed the shooting (Middle Street video).  The Cedar Street video showed a group of four men walk out of a residence at 78 Cedar Street, take a left turn, walk along a sidewalk, take a right turn, and cross the street.  The Middle Street video then tracked their movements as they walked

2

single file along an unoccupied sidewalk where the first and third men fired gunshots at a passing car.  All four men then fled from the scene in the same direction.

These two videos showed distinct clothing worn by each man. The first shooter wore black clothing with white stripes running part way down his sweatpants.  The second shooter (argued by the Commonwealth to be the defendant) wore shorts and a dark hooded sweatshirt (hoodie) with three white stripes running parallel down the sleeves and a white logo on the left breast (an Adidas jacket as one witness described it).  A third man in the group wore an orange shirt with ripped jeans, and a fourth man wore a dark hoodie, a baseball cap, and maroon or red sweatpants.

Investigators gathered footage from five additional surveillance videos depicting the four men along nearby Rivet Street before the shooting.  The Rivet Street videos showed the following sequence of events involving the four men:  (1) the man wearing shorts and the man wearing the orange shirt walked together along the sidewalk, waited outside a doorway during a phone call, and entered the doorway; (2) the two men wearing dark clothing walked together along the sidewalk and passed the doorway; (3) the two men in dark clothing entered an alley, waited, and entered a side door; (4) the four men left from the doorway along the sidewalk, entered a Bluebird taxicab (with the

3

man wearing shorts in the front passenger seat), and drove off; and (5) the taxicab returned, someone walked from the doorway and handed an object to someone on the passenger side of the taxicab, and the taxicab drove away.

The camera angles of the Rivet Street videos provided close and distinguishing images of the four men. As the man wearing shorts approached the building, his face (partially obscured), hands, and legs revealed a dark skin tone. His companion in the orange shirt had a lighter complexion, with his face visible from a variety of angles as he paced on the sidewalk. The two men wearing black had light complexions with faces visible (though a baseball cap partially obscured one).

The taxicab driver testified that she could not remember the clothing of the four men. She did, however, recall that the man who entered the front seat of her taxicab (wearing shorts in the video), was a dark-skinned male. His complexion was darker than the other three men. She described the man in the middle of the backseat as light skinned. The taxicab driver did not get a good look at the other two men in the backseat. She drove the four men to 78 Cedar Street, where all four men got out of the taxicab and entered the residence. Footage from a tenth surveillance video showed the taxicab arrive on Cedar Street where the four men got out and entered the residence.

The address at 78 Cedar Street, where the four men arrived and left before the shooting, became the focus of the investigation. After viewing the video footage connected to this residence, a detective went to 78 Cedar Street and spoke to Miriam Oliveira. She testified that the defendant, who was her friend, visited her home prior to the shooting with three other men. She testified that all four men wore black on the day of the shooting, but quickly added that she couldn't remember. When asked if she provided a description regarding basketball shorts, Oliveira testified that she did not remember.

Evidence at trial also showed that the defendant provided a statement to the police. He said that "he was there, but he didn't shoot anybody."

Discussion. 1. Prosecutor's opening statement. Prior to trial, while discussing competing motions in limine, the prosecutor agreed that he "will not be asking any identification to be made that the persons on the video -- they recognized as Bruno Lopes." The judge then ruled that "any identification of [the defendant] as the person on the video" would be excluded. In his opening statement, the prosecutor told jurors that the defendant and another person fired gunshots at a passing vehicle. The prosecutor then outlined the investigative steps

5

taken by Detective Stephen Wadman, including securing and watching footage from surveillance videos:

> "And in looking back at the video and going back in time from when the shooting occurs, he's able to see the Defendant and those three other males had just walked from 78 Cedar Street. So, at that point, he goes to 78 Cedar Street and meets with the homeowner."

The prosecutor also referred to Det. Wadman obtaining footage from another video "showing the [d]efendant" and a video showing a "taxicab arriving with the [d]efendant." Defense counsel objected at sidebar and moved for a mistrial because the prosecutor's statement that the detective "looked at the video and saw" the defendant amounted to a representation that Det. Wadman would identify the defendant in court as the person in the video. The prosecutor protested that he merely told jurors that the defendant was depicted in the video footage seen by the detective, and he did not state that the detective would identify the defendant from the video footage. After a brief discussion, the judge denied the request for a mistrial, and with defense counsel's agreement, he provided a curative instruction immediately, telling jurors that opening statements are not evidence and "none of the words that you heard the Assistant District Attorney tell you are evidence." He further instructed, "Specifically there was an Officer Wadman who he referred to as saying that Officer Wadman identified Mr. Lopes

6

on the video after looking at the video.  It is not expected in this trial that Officer Wadman is going to testify to that."

We disagree with the defendant's contentions on appeal that the curative instruction was inadequate and the statements require a new trial.  To the extent jurors may have understood the prosecutor's remarks as suggesting that the detective would identify the defendant from the video footage, the judge's specific curative instruction mitigated any possible prejudice.  He immediately alerted jurors to the prosecutor's remark, reminded them that none of the prosecutor's remarks constituted evidence, and instructed them that the detective would not be identifying the defendant from the video footage.  See Commonwealth v. Holley, 476 Mass. 114, 126 (2016) (forceful contemporaneous curative instruction obviates prejudice).  We presume that jurors would understand and follow these instructions as well as the judge's general instructions at the beginning of the trial and during the final charge, in which he cautioned jurors that the remarks of counsel are not evidence.  See Commonwealth v. Andrade, 468 Mass. 543, 549 (2014) (jurors "presumed to follow the judge's instructions"); Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 51 (2003) ("[a]ny possible prejudice was cured by the judge's instruction that opening statements are not evidence").  We also discern no prejudice

7

because the defendant acknowledged his presence at the crime scene, and the prosecutor's comment did not speak to the central issue at trial -- whether the defendant was one of two shooters depicted in the crime scene video footage.

We also discern no error, alone or in combination, from additional remarks of the prosecutor. As to the defendant's argument that the evidence failed to meet the prosecutor's representation that the defendant's friend, Miriam Oliveira, would testify that the defendant wore shorts on the day of the shooting, we discern no "bad faith" or "prejudice" that would warrant a new trial. Commonwealth v. Qualls, 440 Mass. 576, 586 (2003). Despite the prosecutor's opening statement, Oliveira ultimately did not testify that the defendant wore shorts. Instead, she testified that she could not remember providing the police with a description involving "basketball shorts." "A prosecutor in his opening may explain the facts that he expects to prove during the trial, so long as he has a good faith expectation that he will be able to do so with relevant and admissible evidence." Commonwealth v. Jones, 439 Mass. 249, 260 (2003), quoting Commonwealth v. Thomas, 429 Mass. 146, 157 (1999). Absent a showing of the prosecutor's bad faith or prejudice flowing from the prosecutor's remark, "the fact that certain evidence fails to materialize is not a ground for

8

reversal." Qualls, supra at 586. Neither bad faith nor prejudice is present here. Based on a statement the witness previously made to the police (as discussed at a sidebar), the prosecutor had a good faith belief that the witness would testify that the defendant wore basketball shorts. Her failure of memory on the witness stand does not equate with bad faith of the prosecutor. See Commonwealth v. Rosa, 73 Mass. App. Ct. 540, 544 (2009) (no bad faith where prosecutor "unexpectedly faced with the officer's failure to remember the color of the defendant's clothing"). Nor has the defendant shown that the prosecutor's remark resulted in prejudice. As previously stated, the judge instructed jurors on three occasions (before the openings, after the prosecutor's opening, and in the final charge) that the statements of the lawyers were not to be considered as evidence. He carefully limited their consideration to "testimony of the witnesses as you recall the testimony and any documents or other things that were received into evidence as exhibits." Thus, the prosecutor's remark in his opening statement about the shorts would not have been considered by the jury. See Andrade, 468 Mass. at 549.

2. Prosecutor's closing argument. "In determining whether an argument was improper we examine the remarks 'in the context of the entire argument, and in light of the judge's instructions

9

to the jury and the evidence at trial.'" Commonwealth v.
Gaynor, 443 Mass. 245, 273 (2005), quoting Commonwealth v.
Viriyahiranpaiboon, 412 Mass. 224, 231 (1992).

At trial, the prosecutor asked Oliveira questions in an
unsuccessful effort to establish what the defendant was wearing
at her residence. He asked, "[W]hat was [the defendant] wearing
that day?" Oliveira replied, "I don't remember. They was all
wearing black." He asked what the four men who came to her
apartment were wearing, and Oliveira testified, "I think they
was all wearing black." She immediately followed up by
testifying, "I don't remember." On redirect, the prosecutor
asked if she remembered providing any other description to the
police other than "men in all black." Oliveira testified, "I
don't remember." The prosecutor then asked, "If you had
mentioned that one of the males was wearing an orange shirt,
does that refresh your memory?" She replied, "No." "And giving
a different description regarding basketball shorts, you don't
remember --" Once again, she interjected, "No."

After the next witness testified and the judge excused the
jurors for lunch, the prosecutor sought to introduce Oliveira's
prior statement to the police, which referenced the defendant
wearing "gray-ish basketball shorts" on the day of the shooting.

10

Following a voir dire of a police witness and lengthy arguments of counsel, the judge denied the Commonwealth's request.

In his closing argument, the prosecutor referenced Oliveira's failed memory regarding clothing worn by the suspects: "I believe she says they were all -- all wearing black. When pushed further as far as asking (inaudible) that [the defendant] was in gray shorts, she couldn't remember. Pushed further about, Did you see an orange shirt? She couldn't remember." On appeal, the defendant contends that the prosecutor erred because the argument "implied" Oliveira previously reported the defendant was wearing shorts, and the prosecutor "enhanced" the improper implication through the opening statement in which he told jurors that Oliveira would testify the defendant was wearing shorts. We discern no error as to this portion of the argument.

"A prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it." Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999). As the prosecutor's repeated references to the video evidence shows, he argued that the most reliable evidence of the clothing came from other sources (including eight of the ten video clips) that showed what the four suspects

11

were wearing on the day in question.  Accordingly, the prosecutor could suggest, as he did here, that jurors should believe Oliveira when she testified that the defendant was at her house with other men prior to the shooting, but they should not believe her testimony regarding the clothing being worn. Nothing in the prosecutor's argument referred to the content of Oliveira's statement to the police.  Contrast Commonwealth v. Gaudette, 441 Mass. 762, 770 (2004) (improper for prosecutor's argument to imply that he "knew the contents of the police report" that was not in evidence).

Although he did not restate the precise question asked during Oliveira's testimony, we discern "no prejudice." Commonwealth v. Roman, 495 Mass. 412, 427 (2025).  In his closing, the prosecutor recalled the testimony, "When pushed further as far as asking (inaudible) that [the defendant] was in gray shorts, she couldn't remember."  As set forth above, the transcript shows that the prosecutor never directly asked Oliveira if the defendant wore gray shorts, but the argument otherwise accurately reflected the testimony that showed Oliveira could not remember what the defendant wore and could not remember "giving a different description regarding basketball shorts."  The prosecutor did not purport to quote the testimony verbatim and did not mischaracterize Oliveira's lack

12

of memory.  See Commonwealth v. Delacruz, 443 Mass. 692, 695 (2005) ("prosecutor will often paraphrase or summarize from notes or memory a witness's trial testimony in his or her closing argument"); Commonwealth v. Evans, 439 Mass. 184, 194, cert. denied, 540 U.S. 923, 973 (2003) (not improper for closing argument to paraphrase witness testimony).

Any error in the prosecutor's argument with respect to Oliveira's memory failure did not result in prejudice.  See Roman, 495 Mass. at 426 (when reviewing closing argument we consider whether error had "effect on the jury and whether the error contributed or might have contributed to the verdicts" [citation omitted]).  The case focused on fifty exhibits including video recordings and still photographs (some taken from the videos) and the defendant's admission to being at the scene.  Evidence included video clips that methodically traced the movements of the four men from their gathering on Rivet Street, to leaving in a taxicab, to arriving at Oliveira's residence in the taxicab, to walking from that residence toward the shooting scene, to arriving at the scene, where the four men stood alone on a sidewalk and two fired shots (one wearing shorts).  The taxicab driver testified that the front seat passenger had a darker skin tone than that of the other three men.  The videos showed that the front seat passenger wore

13

shorts, and the Rivet Street videos depicted some distinguishing skin tones of the suspects.  The defendant admitted that he was present at the scene of the shooting -- a scene where the only persons present on the sidewalk were the four persons depicted in the videos.  By comparing the defendant's appearance in the courtroom with the video evidence depicting skin tones of the other three suspects, jurors could exclude the possibility that the defendant was the man in the orange shirt or one of the remaining two men wearing dark pants.  Thus, through a process of elimination, jurors could conclude, without reference to any error in the prosecutor's closing argument, that the defendant was the only person wearing shorts and was necessarily the second shooter.

We also discern no hybridized error from a combination of the prosecutor's opening statement with the closing argument. As previously discussed, the prosecutor failed to deliver on his opening statement in which he suggested Oliveira would testify that the defendant wore shorts.  That failure to deliver did not result in prejudice, and the judge repeatedly instructed jurors that opening statements are not evidence.  We see no risk that following the closing arguments jurors would engage in speculation and disregard the judge's instructions at the

14

beginning of the trial and his repeated instructions on the same subject in his final charge to the jury.

Finally, the judge's careful, detailed, and extensive instructions obviated any risk of prejudice. At the beginning of the trial, the judge told jurors that opening statements and closing arguments are not evidence. He added, "You must decide this case solely from the evidence presented in the courtroom, and this includes the sworn testimony of witnesses, any exhibits that I admit into evidence, any [stipulations and judicially noticed facts]." He also cautioned, "If one of the attorneys or I refer to some part of the evidence that does not [] coincide with your own recollection, it is your recollection which you are to follow in your deliberations." In his final charge, the judge told jurors, "You are not to engage in any guesswork about any unanswered questions that might remain in your mind or to speculate about what 'the real facts' might or might not have been." He repeated his definition of evidence, told jurors to refrain "from suspicion or conjecture," and repeated that "the opening statements and the closing [arguments] are not evidence." He again noted, "If your memory of the testimony differs from the attorneys in their closing arguments, you are to follow your own recollection of the testimony." Jurors are

"presumed" to follow such instructions.  <u>Andrade</u>, 468 Mass. at 549.

Having considered the defendant's claims in the context of the entire argument, the judge's instructions, and the evidence presented, <u>Gaynor</u>, 443 Mass. at 273, we discern no error or combination of errors that requires reversal.

<u>Judgment affirmed</u>.

By the Court (Rubin, Shin &
  Hodgens, JJ.[1]),

Clerk

Entered:  May 6, 2025.

---

[1] The panelists are listed in order of seniority.