NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-07763

COMMONWEALTH vs. SHAWN T. FRITZ.

Suffolk.     May 4, 2015. - July 29, 2015.

Present: Gants, C.J., Spina, Cordy, Botsford, Duffly, & Hines, JJ.

Homicide. Firearms. Constitutional Law, Public trial, Jury, Conduct of government agents, Confrontation of witnesses. Jury and Jurors. Evidence, Relevancy and materiality, Motive, Admission by silence, Expert opinion, Consciousness of guilt, Cross-examination, Credibility of witness. Witness, Expert, Credibility. Practice, Criminal, Capital case, New trial, Severance, Public trial, Jury and jurors, Empanelment of jury, Challenge to jurors, Conduct of government agents, Admissions and confessions, Confrontation of witnesses, Argument by prosecutor, Instructions to jury. Escape.

Indictments found and returned in the Superior Court Department on December 19, 1994.

The cases were tried before Vieri Volterra, J.; a motion for a new trial, filed on November 19, 2009, was considered by Mitchell H. Kaplan, J.; and a motion for a new trial, filed on December 9, 2011, was heard by Linda E. Giles, J.

Rosemary Curran Scapicchio for the defendant.
Paul B. Linn, Assistant District Attorney, for the Commonwealth.

HINES, J.   On October 24, 1996, a jury convicted the defendant, Shawn T. Fritz, of murder in the first degree of Albert Tyler Titcomb, III, on the theories of deliberate premeditation and extreme atrocity or cruelty, and of unlawful possession of a firearm.[1]  The defendant's appeal from his convictions was consolidated with his appeals from the denial of his first two motions for a new trial.[2]  He raises a plethora of appellate issues and also asks that we exercise our power under G. L. c. 278, § 33E, to grant him a new trial or to reduce the verdict.[3]  We affirm his convictions and the orders denying his motions for a new trial, and discern no basis to reduce the verdict or to order a new trial.

---

[1] The defendant was tried together with Timothy McLaughlin and Frederick Stearns.  The trial judge granted McLaughlin's and Stearns's motions for a required finding of not guilty after the close of the Commonwealth's case.

[2] The defendant is represented on appeal by counsel who had represented him in connection with his new trial motions.  The trial judge did not decide those motions.

[3] The defendant submitted two appellate briefs with an unwieldy total of 142 pages, in violation of Mass. R. A. P. 16 (h), as amended, 438 Mass. 1601 (2003); one brief also is in apparent violation of Mass. R. A. P. 20 (a), as amended, 456 Mass. 1601 (2010).  Together, the briefs assert approximately twenty-four different principal claims of error, some of which are barely comprehensible and lack compliance with our rule governing appropriate appellate argument.  Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).  See Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011).

Background. We summarize the facts the jury could have found. The victim was shot in the head five times at close range in the hallway of 17 Carney Court, an apartment building in the Charlestown section of Boston, at approximately 4 P.M. on November 22, 1994. He died as a result of his wounds. The murder weapon was never recovered. Five discharged .32 caliber automatic cartridge casings and two spent .32 caliber bullets were recovered in the vicinity of the victim's body. Three spent bullets and one fragment of a spent bullet were recovered from the victim's body during his autopsy. A firearms identification expert testified regarding his opinion that, based on his microscopic examination, all of the discharged cartridge casings and spent bullets had been fired from the same weapon.

The victim had a lengthy history of drug addiction. He owed the defendant fifty dollars. When unable to pay, the victim fabricated a story that he had been arrested and had used the fifty dollars to post bail. This story was reported to the defendant by the victim's cousin and again by the victim on the morning of the shooting, but the defendant did not believe it.

The victim spent much of the day on November 22 with his friend, William Barends, in Charlestown. The two smoked marijuana with other acquaintances and consumed other drugs. The medical examiner who conducted the victim's autopsy

testified that at the time of the victim's death, he had a large amount of morphine in his blood, which was the result of ingesting either morphine or heroin.

A woman who lived across from 17 Carney Court testified that she saw the defendant, Barends, the victim, and others near her apartment on the afternoon of November 22; heard shots fired at approximately 3:50 P.M.; saw the defendant walk out of the entryway of 17 Carney Court; and then saw him run toward Bunker Hill Street. When she walked to the hallway of 17 Carney Court, she discovered the victim lying on his stomach. A boy testified that on November 22, when he was fourteen years of age, he was waiting for friends near 17 Carney Court; saw four "kids" enter the hallway at 17 Carney Court and close the door; heard shots; and saw one of the "kids," whom he later identified as the defendant from a photographic array, then run from the hallway. Mary Johnson, the mother of one of the victim's children, testified that the defendant had admitted to her that he had been present near the scene of the shooting on the day the victim was killed and that the victim owed him money, but he denied committing the murder.

The Commonwealth also called Mark Duggan, who testified as follows. A young woman Duggan had been dating at the time lived across from 17 Carney Court, and on November 22, he had been working on an automobile in a lot behind that address. Duggan

saw the defendant, the victim, Barends, and two others in the area on the afternoon of the shooting and observed that the victim was unsteady on his feet.  Later, as Duggan was leaving in a taxicab, he observed this group, including the victim, Barends, and the defendant, enter the building across the way (17 Carney Court).  Subsequent to the victim's death, in 1995, while Duggan was being detained after an arrest on an unrelated matter, he spoke with the defendant, who also was being detained.  The defendant stated that he "didn't understand why everyone was coming down on [him]" and that "[h]e wasn't the only one there that day."

Barends provided the testimony that most directly tied the defendant to the shooting.  After describing the activities in which he and the victim had engaged in on November 22, Barends testified that the defendant suggested to the group that had formed, which included the victim, Frederick Stearns, and Timothy McLaughlin (see note 1, supra) that they smoke some "angel dust" together.  Although Barends told the defendant that the victim did not "need[] any more of that," the defendant and the victim went into the hallway of 17 Carney Court presumably to smoke.  Barends then followed the two inside.  While Barends was near the door to the exterior, he heard gun shots and turned to see the defendant pointing a gun at the victim.  Barends then ran from the hallway.  About ten minutes later, the defendant

approached Barends, who was visibly shaken, gave him a hug, and stated, "How do you think I feel?  I just took a father from his son."

The defendant attempted to escape while awaiting trial.  In connection with a disciplinary hearing following the escape attempt, the defendant stated that he was only twenty-two years of age; was facing life in prison; and, were he to have the opportunity, he would try to escape again.

The defendant did not testify, and he did not present any evidence.  Rather, his defense counsel attacked the credibility of Barends and Duggan, pointing out during cross-examination that they were criminals who had received benefits from the prosecutors in this case and in Federal cases, including placement in the witness protection program and payment of living expenses.

Discussion. 1. Pretrial issues. a. Severance. Contrary to the defendant's contention, there was no abuse of discretion in the judge's declining to sever the defendant's case from those of McLaughlin and Stearns.  There was no showing that the defenses at trial were mutually antagonistic and irreconcilable. See Commonwealth v. Siny Van Tran, 460 Mass. 535, 543 (2011).

b. Public trial. In 2011, the defendant filed a second motion for a new trial claiming a violation of his right to a public trial under the Fifth, Sixth, and Fourteenth Amendments

to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights when court officers excluded the public and his family from the court room during jury empanelment. A Superior Court judge (who was not the trial judge and was not the judge who decided the first motion for a new trial) conducted an evidentiary hearing at which the defendant's trial counsel and sister testified, and also a newspaper reporter. In her written memorandum of decision and order, the judge made the following findings of fact.

Jury empanelment in this case took place during the course of two days, and the court room was closed during at least the first day of empanelment. On the first day of empanelment, court officers asked everyone, including the defendant's sister and mother, to leave, and they were not permitted to reenter.

At the time of the defendant's trial in 1996, it was a well-established custom and practice at the Superior Court in Suffolk County to exclude members of the public, including members of the media, from the court room during empanelment. Court officers would clear the court room of the public before the venire was escorted in because of space constraints. A court officer would be posted at the court room door, which bore a sign reading, "Jury Selection -- Do Not Enter," during jury empanelment.

The defendant's trial counsel, who had many years of experience and was known by the judge to be "a most capable, skilled, and reputable attorney," had no specific memory of a court room closure in the defendant's trial.  The defendant's trial counsel would not have had any tactical reason to ask that the defendant's family members be excluded from the court room.  His focus would have been on the various aspects of the jury selection process.  He would not have objected to the practice of clearing the court room for jury empanelment because he was not aware that it raised an issue of constitutional dimension until the publication of Commonwealth v. Cohen (No. 1), 456 Mass. 94 (2010).  As such, defense counsel did not think to discuss the matter with the defendant or his family.  Regardless, it was not defense counsel's practice even to have the defendant at sidebar during empanelment.

The judge correctly concluded that a procedural waiver occurred in this case and that the case stands on all fours with our decisions in Commonwealth v. Morganti, 467 Mass. 96, cert. denied, 135 S. Ct. 356 (2014), and Commonwealth v. Alebord, 467 Mass. 106, cert. denied, 134 S. Ct. 2830 (2014).  The lack of defense counsel's specific memory on what occurred during the jury empanelment in the defendant's case is not significant, as he testified to knowledge of the general practice at that time. See Commonwealth v. Jackson, 471 Mass. 262, 268-269 (2015)

(finding procedural waiver despite fact that neither defendant nor defense counsel had been aware of closure). Further, any knowledge would not have altered his practice, as Cohen (No. 1), supra, had not yet been decided. Thus, in the circumstances, defense counsel was not ineffective for failing to object to the closure. See Alebord, supra at 114; Morganti, supra at 104-105. Last, we conclude that no prejudice has been shown to have arisen from the closure as no "effect on the judgment" has been shown to have occurred. See Commonwealth v. LaChance, 469 Mass. 854, 858-859 (2014). Cf. Commonwealth v. Wall, 469 Mass. 652, 673 (2014); Commonwealth v. Dyer, 460 Mass. 728, 735 n.7 (2011), cert. denied, 132 S. Ct. 2693 (2012).

c. Exclusion of defendant at sidebar and in off-the-record discussions between judge and prospective jurors during jury empanelment. The record indicates that the defendant, through counsel, waived his right to be present at sidebar discussions during jury empanelment. The defendant's express consent or personal waiver was not required. See Commonwealth v. Myers, 82 Mass. App. Ct. 172, 181-182 (2012) (personal waiver of defendant only required for "very short list of rights," including whether to plead guilty, waive jury trial, testify on own behalf, take an appeal, and waive right to counsel). The defendant's additional claim, concerning his absence from certain off-the-record conversations between the judge and several prospective

jurors, is waived as he made no request to be present, the judge did not take steps to exclude him, and defense counsel never objected to his absence.  See Commonwealth v. Dyer, 460 Mass. 728, 738 (2011), cert. denied, 132 S. Ct. 2693 (2012).  Last, to the extent that any error occurred from these particular absences, the defendant has not shown that a substantial likelihood of a miscarriage of justice resulted.

d.  Peremptory challenges.  There is no merit to the defendant's argument that he should be afforded a new trial because his Federal and State constitutional rights were violated when the trial judge refused to permit peremptory challenges of three African-American jurors.  "Article 12 of the Massachusetts Declaration of Rights proscribes the use of peremptory challenges 'to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community.'"  Commonwealth v. Smith, 450 Mass. 395, 405, cert. denied, 555 U.S. 893 (2008), quoting Commonwealth v. Soares, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979).

We agree with the motion judge who denied the defendant's motion for a new trial on this ground that the record supports the trial judge's determination that a pattern of purposeful exclusion of members of a discrete group had been established. See Commonwealth v. Curtiss, 424 Mass. 78, 80 (1997).  Although

the trial judge did not make a specific finding whether the reasons advanced by the exercising party were "bona fide or a mere sham," id. at 81, the judge's statements (which clearly indicated that he was rejecting the asserted reasons) demonstrate that he fulfilled his responsibility to determine the reasonableness of the basis given for the challenge and the actual motivation in asserting it.  The record supports our conclusion that the trial judge acted within his discretion in determining the challenges to be race-based and in deciding not to allow the challenges.  See id. at 82.  Last, contrary to the defendant's contentions, "[a] judge may, of course, raise the issue of a Soares violation sua sponte."  Smith, supra at 406.

2.  Trial errors.  a.  Evidentiary errors.  "Generally, determinations as to the admissibility of evidence lie 'within the sound discretion of the trial judge.'"  Commonwealth v. Bins, 465 Mass. 348, 364 (2013), quoting Commonwealth v. Jones, 464 Mass. 16, 19-20 (2012).

i.  Admission of defendant's postindictment statements made to Duggan.  The defendant argues that his State and Federal constitutional rights were violated by the admission of his postindictment statements to Duggan, who was acting as a jailhouse informant and had deliberately elicited the statements.  The defendant's claim fails because on this record, he did not demonstrate the existence of an agency relationship

between Duggan and the government at the time of the challenged statement.  See Commonwealth v. Murphy, 448 Mass. 452, 459, 467 (2007); Commonwealth v. Rancourt, 399 Mass. 269, 274 (1987).  We add that the statements at issue only placed the defendant near the location where the victim had been killed, which was cumulative of other evidence, including the defendant's own statement to police and that of other witnesses in the area.  Thus, even the improper admission of the statements would not have required a new trial.

ii.  Admission of Johnson's testimony concerning statements made by the defendant.  Much of the challenged testimony of Johnson was properly admitted with a contemporaneous limiting instruction as bearing on the defendant's motive for killing the victim.  See Commonwealth v. Diaz, 422 Mass. 269, 273 (1996).  Johnson's testimony concerning the defendant's silence after she asked him why, if he was innocent, he did not go to the police falls into the category of an admission by the defendant.  See Commonwealth v. Crayton, 470 Mass. 228, 247 n.23 (2014) (silence of defendant in response to statement of another may be admissible as admission of defendant); Commonwealth v. Babbitt, 430 Mass. 700, 705-706 (2000) (adoptive admissions include statements to which defendant responds by silence).  There was no error in the admission of the challenged testimony.

iii. <u>Admission of expert firearms identification testimony</u>. As an initial matter, defense counsel did not challenge the expert qualifications of the firearms identification witness, Boston police Officer John Seay, at trial. Nor did the defendant request a hearing pursuant to <u>Commonwealth</u> v. <u>Lanigan</u>, 419 Mass. 15, 24 (1994), and <u>Daubert</u> v. <u>Merrell Dow Pharms., Inc</u>., 509 U.S. 579 (1993), to establish the reliability of the methodology underlying Seay's testimony. The defendant mounted no such challenge to the witness's conclusion, based on his microscopic examination, that all the spent shell casings and bullets recovered had been fired from the same weapon. These issues (recast as claims for ineffective assistance of counsel), thus, have been waived. <u>Fishman</u> v. <u>Brooks</u>, 396 Mass. 643, 649 (1986). In any event, we are satisfied, based on the record indicating Seay's experience in firearms identification, including examining 2,000 or more firearms over the course of approximately three years, that the trial judge acted within his discretion in determining that Seay satisfied the foundational requirements to qualify as an expert.

Turning to the substance of Seays's testimony, his testimony and conclusion were of a type that this court has long found admissible and for which a <u>Daubert</u>-<u>Lanigan</u> hearing is not required. <u>Commonwealth</u> v. <u>Pytou Heang</u>, 458 Mass. 827, 845-846 (2011). Last, on the record before us no substantial likelihood

of a miscarriage of justice could have occurred from the admission of Seay's testimony.  Seay only provided his "opinion" at trial and did not express it with a reasonable degree of scientific certainty.  Id. at 849.  Further, no weapon was recovered, and the defense did not challenge the theory that there had been a single shooter at trial; rather, he argued that the defendant had not been the shooter.  Moreover, the judge correctly instructed the jury that they could accept or reject an expert's opinion and give an expert's testimony as much weight as they decided it deserved.

iv.  Admission of medical examiner's testimony and death certificate.  Assuming without deciding that, in this case and on these charges, the content of the laboratory report concerning the victim's blood alcohol level should have been presented by the author of the report, see Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 (2009), and not by the medical examiner, we conclude that its erroneous admission was harmless beyond a reasonable doubt.  See Commonwealth v. Vasquez, 456 Mass. 350, 352 (2010).  The evidence pertained to the victim and not to the defendant, went unchallenged during the medical examiner's cross-examination, and was cumulative of other witness testimony concerning the condition of the victim.

Where the manner of death was properly redacted, the death certificate was properly admitted.  Commonwealth v. Wallace, 460

Mass. 118, 127 (2011). Contrary to the defendant's contention, no violation of the confrontation clause occurred in its admission because the medical examiner who testified at trial concerning its content was the person who had prepared the death certificate and had performed the victim's autopsy. Cf. Commonwealth v. Almonte, 465 Mass. 224, 242 n.19 (2013).

v. Evidence of the defendant's attempted escape. On the record before us we reject the defendant's argument that, because it was unduly prejudicial, evidence of the defendant's attempted escape from jail should not have been admitted. See Commonwealth v. Oeun Lam, 420 Mass. 615, 617 (1995) (evidence of attempted escape admissible to prove consciousness of guilt); Commonwealth v. Roberts, 407 Mass. 731, 736 (1990) (whether inflammatory nature of evidence outweighs probative value is matter within discretion of trial judge).

b. Restrictions during cross-examination. The defendant argues that he was unduly prejudiced by the trial judge's improper restriction of his cross-examination of Duggan and Barends. The judge who denied his motion for a new trial on this basis rejected the claim, pointing out that the record established a meaningful opportunity to establish bias on the part of these witnesses. We agree. The trial judge did not abuse his discretion in determining the proper scope of cross-

examination. See Commonwealth v. Crouse, 447 Mass. 558, 572 (2006).

c. Improper rehabilitation or bolstering witness credibility. The defendant argues for the first time on appeal that, in some instances over objection at trial, the judge impermissibly allowed the Commonwealth to bolster the credibility of certain witnesses with prior consistent statements and improperly questioned witnesses concerning their fear of the defendant. The defendant's contentions lack merit. In the circumstances here, where defense counsel challenged the witnesses' delayed reporting in the opening statements, no prejudice arose when the prosecutor elicited the circumstances of that disclosure during direct examination. See Commonwealth v. Hall, 66 Mass. App. Ct. 390, 396 (2006). Nor, in the circumstances, did the judge abuse his discretion in permitting one witness to testify that she had not gone to police initially because she was afraid where she did not attribute that fear to the defendant. See Commonwealth v. Santiago, 458 Mass. 405, 411-412 (2010); Commonwealth v. Fitzgerald, 376 Mass. 402, 412 (1978).

d. Prosecutor's closing argument. The defendant challenges numerous statements in the prosecutor's closing argument. Regarding those that were the subject of an objection, we review for prejudicial error. Commonwealth v.

<u>Andrade</u>, 468 Mass. 543, 551 (2014). Where no objection was made, we "examine whether any of the statements were improper and, if so, whether the impropriety created a substantial likelihood of a miscarriage of justice." <u>Commonwealth</u> v. <u>Gentile</u>, 437 Mass. 569, 579-580 (2002). "Remarks made during closing arguments are considered in context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." <u>Commonwealth</u> v. <u>Whitman</u>, 453 Mass. 331, 343 (2009).

We need not address each of the criticized remarks. We conclude that, for the most part, the prosecutor's argument was based on the evidence and fair inferences from the evidence, or was a proper response to the argument of defense counsel. On the one occasion in the beginning of her closing argument when the prosecutor improperly attacked defense counsel, the judge immediately addressed the error by sustaining defense counsel's objection and instructing the jury to disregard the argument, thus effectively mitigating any potential prejudice.[4] In

---

[4] The error was not compounded by improper burden-shifting in the prosecutor's opening statement. In response to the prosecutor's statement that the shooting had been an execution without justification, the judge gave a curative instruction at the end of her opening explaining that the Commonwealth bears the burden of proving a lack of justification for the killing. No reversible error occurred, in isolation or in combination with the challenged remarks of the prosecutor's closing argument.

addition, the judge correctly instructed the jury that the closing arguments of counsel are not evidence, and emphasized that the jury were to decide the case on the evidence alone. No prejudicial error resulted. Even if the prosecutor crossed the line with some improper references to fear on the part of three of the witnesses, in view of the evidence at trial, defense counsel's attack of the credibility of these witnesses, and the judge's instructions to the jury, and "because the jury are to be given a measure of sophistication in sorting out excessive claims made in closing argument," we conclude that any missteps made by the prosecutor did not create a substantial likelihood of a miscarriage of justice. See Commonwealth v. Frank, 433 Mass. 185, 196 (2001). We conclude that no prejudicial error or substantial likelihood of a miscarriage of justice arose from any statements made in the prosecutor's closing argument.

e. <u>Jury instructions</u>. i. <u>Failure to instruct on voluntary intoxication</u>. Because the evidence,[5] viewed in a light most favorable to the defendant, see Commonwealth v. Little, 431 Mass. 782, 783 (2000), did not show "debilitating intoxication" that could support a reasonable doubt as to whether the defendant was capable of forming the requisite criminal intent, see Commonwealth v. James, 424 Mass. 770, 789 (1997), the

---

[5] Contrary to the defendant's contention, it was the victim, not the defendant, with whom Barends had smoked a "joint" earlier in the day on November 22.

evidence did not warrant a voluntary intoxication instruction and the judge did not commit error by declining to give it.

ii. _Judge's slip of the tongue_. When viewed in context of the entire charge, no substantial likelihood of a miscarriage of justice resulted when the judge erroneously instructed:

> "For any killing to be either first or second degree murder, it must be an unlawful killing committed with malice aforethought. If the Commonwealth has not proven to you beyond a reasonable doubt that the defendant unlawfully killed the victim with malice aforethought, you, the jury, must find the defendant _guilty_ of both first and second degree murder" (emphasis added).

Obviously, the judge inadvertently omitted "not" before "guilty." Where counsel did not object, we question whether he recognized it as an obvious slip of the tongue that did not warrant an immediate correction. Regardless, in the circumstances, no reasonable juror could have failed to realize that it was a mere slip of the tongue. See _Commonwealth_ v. _Silva-Santiago_, 453 Mass. 782, 805 (2009).

iii. _Definition of malice_. The defendant's challenge to the judge's definition of malice was rejected in _Commonwealth_ v. _Simpson_, 434 Mass. 570, 588-589 (2001). The record here does not require a different result.

iv. _Failure to instruct pursuant to DiGiambattista_. The defendant's trial took place in 1996, and an instruction pursuant to _Commonwealth_ v. _DiGiambattista_, 442 Mass. 423 (2004), was not then required. See _Commonwealth_ v. _Dagley_, 442

Mass. 713, 721-722 (2004), cert. denied, 544 U.S. 930 (2005).
There was no error.

v. _Disbelief of witnesses' testimony_. Contrary to the
defendant's argument, there was no error in an instruction that
he contends disallowed the jury from disbelieving witnesses.
See Commonwealth v. Gonzalez, 67 Mass. App. Ct. 877, 881-882
(2006).

vi. _Circumstantial evidence_. The defendant challenges,
for the first time on appeal, one sentence in the judge's
instructions pertaining to circumstantial evidence, namely,
"[t]he Commonwealth need not exclude every reasonable hypothesis
of innocence provided that the evidence as a whole supports a
conclusion of guilt beyond a reasonable doubt." The instruction
was a correct statement of law and, when viewed in context of
the charge as a whole, did not create jury confusion. See
Commonwealth v. Platt, 440 Mass. 396, 401 (2003); Commonwealth
v. Merola, 405 Mass. 529, 533-534 (1989).

vii. _Witness's prior inconsistent statement_. On the
record before us, no prejudicial error arose from the judge's
decision not to instruct that the jury could consider prior
inconsistent statements for their substantive value. See
Commonwealth v. Swafford, 441 Mass. 329, 338 n.11 (2004).

viii. _Extreme atrocity or cruelty_. The judge did not
commit error by instructing that, in deciding whether the

defendant acted with extreme atrocity or cruelty, they (the jury) served as "the representatives of the conscience of the community."  Commonwealth v. Barros, 425 Mass. 572, 585-586 (1997), and cases cited.

ix.  Inadequacy of police investigation.  The defendant's claim concerning the decision not to give an instruction pursuant to Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980), has no merit.  See Commonwealth v. Lao, 460 Mass. 12, 23 (2011).  On this record, there was no error.

f.  Sleeping juror.  Where the trial judge found that he had been watching the jury and did not see any jurors sleeping, he did not abuse his discretion in declining to conduct a voir dire to determine whether, as defense counsel suspected, one particular juror had been sleeping.  See Commonwealth v. Beneche, 458 Mass. 61, 77-78 (2010); Commonwealth v. Morales, 453 Mass. 40, 47 (2009).

3.  New trial motion predicated on prosecutorial misconduct.  a.  Withholding exculpatory evidence.  The record does not support the defendant's claim that he be afforded a new trial on the ground that the prosecutor prejudicially withheld material, exculpatory evidence.  The order denying the defendant's motion for a new trial on this ground sets forth much of the relevant facts, with the record providing the remaining information.  As an initial matter, not all of the

"evidence" was material or exculpatory, or even withheld.  Even assuming the contrary, we see no basis for concluding that the defendant's rights were irremediably prejudiced by such failure to disclose.  See Commonwealth v. Caillot, 454 Mass. 245, 261-262 (2009), cert. denied, 559 U.S. 948 (2010).

b.  Presentation of false or materially misleading evidence concerning Duggan's testimony about when he dated a prior girl friend.  The record does not support the defendant's claim that he is entitled to a new trial because his convictions were obtained by the presentation of testimony of Duggan that the prosecution knew to be false.  "Simply because a witness alters some portion of his testimony at the time of trial is not a sufficient reason to conclude that the new testimony is false, or that the Commonwealth knew or had reason to know that it was false."  Commonwealth v. McLeod, 394 Mass. 727, 743, cert. denied, 474 U.S. 919 (1985).  "Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury.  It was for the jury to decide whether or not to credit the witness."  Id. at 743-744, quoting United States v. Holladay, 566 F.2d 1018, 1019 (5th Cir.), cert. denied, 439 U.S. 831 (1978).  The facts of this case fall into this latter category.

Conclusion.  Based on the foregoing, we discern neither error nor abuse of discretion in the denial of the defendant's

motions for a new trial.  We thus affirm the orders denying his motions for a new trial and affirm his convictions.  There is no basis to reduce the verdict or to order a new trial pursuant to G. L. c. 278, § 33E.

<u>So ordered</u>.