The defendant, Douglas Campbell, appeals from the judgments after his convictions by a Superior Court jury, of two counts of forcible rape of a child, G. L. c. 265, § 22A ; one count of aggravated rape of a child, G. L. c. 265, § 23A ; and two counts of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B.[2] On appeal, the defendant maintains that the judge abused his discretion in admitting prior bad acts evidence and that the prosecutor made improper remarks in her opening statement and closing argument. We affirm.
The defendant was indicted on multiple counts of assault on, and rape of, his fiancée's daughter, whom we shall call Casey, while she was between the ages of eleven and thirteen. After the defendant's first trial resulted in a hung jury, the defendant was retried. The same judge presided over both trials.
1. Prior bad act evidence. On appeal, the defendant maintains that the prior bad acts were inadmissible. As the defendant's objection was preserved, we review for error, and in the presence of error, for prejudicial error. Commonwealth v. Crayton, 470 Mass. 228, 252 (2014).
Prior to the first trial, the Commonwealth moved in limine to admit twelve prior bad acts, while the defendant moved to exclude all such evidence. Many of the acts involved the defendant's treatment of both Casey and her mother. The judge carefully parsed the evidence, conducted a voir dire of Casey, and decided to admit eight of the twelve acts. At the second trial, these acts were again admitted, over the defendant's objection.
Evidence of a defendant's prior bad acts is generally inadmissible if proffered "for the purpose of demonstrating the defendant's bad character or propensity to commit the crimes charged." Id. at 249. See Mass. G. Evid. § 404(b) (2017). However, this evidence may be admissible "for some other purpose, for instance 'to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation.' " Crayton, supra, quoting from Commonwealth v. Walker, 460 Mass. 590, 613 (2011). Despite any potential relevance, "the evidence will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant." Ibid. This determination is left "to the sound discretion of the trial judge and will not be disturbed by a reviewing court absent 'palpable error.' " Commonwealth v. McCowen, 458 Mass. 461, 478 (2010), quoting from Commonwealth v. Fordham, 417 Mass. 10, 23 (1994).
The judge did not abuse his discretion. He carefully weighed the probative value of the evidence against its potential for prejudice and excluded some of the requested testimony. The judge admitted only those acts that Casey witnessed, reasoning that the probative value of revealing Casey's state of mind, and contextualizing the defendant's relationship with Casey, outweighed the potential prejudice to the defendant. Testimony that the defendant repeatedly verbally and physically abused both Casey and her mother was relevant to show the reasonableness of Casey's fear of the defendant and to explain her delay in reporting the sexual abuse, as was the fact that she came forward once he was incarcerated on unrelated charges.[3] See Commonwealth v. McKinnon, 35 Mass. App. Ct. 398, 404-405 (1993) (evidence of defendant's abusive behavior was admissible to show victim's fear for herself and her mother, helping to explain her delay in reporting rape). In addition, evidence of the defendant's behavior toward Casey was properly admitted to establish the nature of their relationship. See Commonwealth v. Morris, 82 Mass. App. Ct. 427, 440-442 (2012), quoting from Commonwealth v. DeMarco, 444 Mass. 678, 682 (2005) (evidence that defendant called victim "vulgar names and threatened her" was admissible to "establish[ ] the defendant's pattern of disrespect and hostility toward the victim that continued until the day he raped her").
Finally, the judge's numerous limiting instructions to the jury minimized the risk of unfair prejudice to the defendant. See Commonwealth v. McGeoghean, 412 Mass. 839, 842 (1992) (A limiting instruction "tends to offset any improper prejudicial effect of evidence that might be thought to show the defendant's bad character or propensity for violent acts and focuses the jury's attention on the proper application of the evidence").
Contrary to the defendant's assertion, this case is distinguishable from Commonwealth v. Dwyer, 448 Mass. 122 (2006). In Dwyer, the prosecutor elicited a significant amount of detailed testimony regarding seven distinct incidents of sexual abuse that allegedly occurred before the operative period in the indictments. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 128. The Supreme Judicial Court found that although "some evidence of uncharged conduct may be admissible to give the jury a view of the entire relationship between the defendant and the alleged victim," the amount of uncharged conduct presented at trial overwhelmed the evidence of charged conduct. Id. at 128-129. Conversely, the prior bad acts testimony in this case was primarily limited to conduct falling within the indictment range and did not "divert the jury's attention from the charged acts." Id. at 129.
2. Opening statement and closing argument. The defendant takes issue with numerous parts of the prosecutor's opening statement and closing argument. As the defendant did not object at trial, we review to determine whether these statements amounted to error creating a substantial risk of a miscarriage of justice. See Commonwealth v. Abdul-Alim, 91 Mass. App. Ct. 165, 171 (2017).
a. Opening statement. The defendant maintains that the prosecutor improperly evoked the jury's sympathy when she referred to the defendant as Casey's "father figure," and stated that Casey had been "downstairs folding laundry, something she always did as a [twelve] year old in middle school" when she was raped. The prosecutor is entitled to state "anything that [she] expects to be able to prove by evidence," so long as this expectation is "reasonable and grounded in good faith." Commonwealth v. Fazio, 375 Mass. 451, 454, 456 (1978). Casey later testified to the defendant's parent-like role in her life and the sexual assault that occurred while she was folding laundry.
b. Closing argument. For the reasons mentioned above, the prosecutor's argument that the defendant abused his role as Casey's caregiver was appropriately drawn from the evidence. See Commonwealth v. Murchison, 418 Mass. 58, 59 (1994) (counsel may argue reasonable inferences drawn from evidence). Nor did the argument constitute an improper appeal to sympathy or prejudice. The prosecutor was permitted to argue that the defendant took advantage of his role to obtain access to, and exert control over, Casey.
Taken in context, the prosecutor's statement that Casey had cried on the witness stand did not impermissibly suggest that she was entitled to greater credibility because she was willing to endure the hardships of testifying. Contrast Commonwealth v. Dirgo, 474 Mass. 1012, 1013-1014 (2016). Rather, the prosecutor asked the jury to recall Casey's demeanor, and to consider it when deciding whether or not to believe her testimony. The defendant had challenged Casey's credibility; this statement was permissible rebuttal. See Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999) ("A prosecutor can address, in a closing argument, a witness's demeanor, ... and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs").
Error in the prosecutor's reference to living in a "house of horrors," was cured by the judge's instruction to disregard this characterization and to consider only how Casey's environment affected her state of mind. See Commonwealth v. Fritz, 472 Mass. 341, 352 (2015), quoting from Commonwealth v. Frank, 433 Mass. 185, 196 (2001) ("[T]he jury are to be given a measure of sophistication in sorting out excessive claims made in closing argument").
Judgments affirmed.

He was acquitted of one count of aggravated rape of a child.

Casey was permitted to testify that the defendant was incarcerated when she disclosed the abuse. In order to reduce speculation as to the reasons for the defendant's incarceration, the judge read a stipulation to the jury, stating that the defendant served "six months in the [h]ouse of [c]orrection for motor vehicle offenses totally unrelated in any manner to this case." The judge excluded evidence of the defendant's physical abuse of their dog. Additionally, the prosecutor was not allowed to elicit testimony about the specific names the defendant called Casey's mother, but only that the defendant frequently called her mother derogatory names in Casey's presence.