NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-1227                                         Appeals Court

DAVID M. ROSS, personal representative,[1] & another[2]  vs.
GRETCHEN W. DIETRICH.

No. 22-P-1227.

Middlesex.      January 4, 2024. – July 19, 2024.

Present:  Rubin, Ditkoff, & Grant, JJ.


Medical Malpractice.  Negligence, Medical malpractice.  Jury and
    Jurors.  Practice, Civil, Examination of jurors.



    Civil action commenced in the Superior Court Department on
April 5, 2018.

    The case was tried before John P. Pappas, J.


    Chester L. Tennyson, Jr., for the plaintiffs.
    Tory A. Weigand for the defendant.


    DITKOFF, J.  The plaintiffs, David M. Ross and William J.

Ross, personal representatives of the estate of Margaret E. Ross

(decedent), appeal from a judgment in favor of Dr. Gretchen W.

_____

        [1] Of the estate of Margaret E. Ross.

        [2] William J. Ross, personal representative of the estate of
Margaret E. Ross.

Dietrich after a Superior Court jury found her not negligent in her medical treatment of the decedent. The sole issue on appeal is whether the trial judge abused his discretion in setting limitations on attorney-conducted voir dire of the prospective jurors. Concluding that the trial judge acted within his discretion in replacing the plaintiffs' proposed jury voir dire questions with alternative questions while allowing reasonable follow-up, we affirm.

1. Background. The plaintiffs "ha[ve] not provided us with a transcript of the evidence presented at trial, which limits our ability to review [their] claims." Paiva v. Kaplan, 99 Mass. App. Ct. 645, 646 n.2 (2021). The parties have provided us with transcripts only of the jury empanelment and the jury instructions. So far as we can discern, the decedent was seen by a nurse practitioner at Somerville Family Practice on March 31, 2015, after experiencing a "whitish plaque" on her tongue. The nurse practitioner treated her for an external yeast infection, and did not test her for diabetes.[3]

On April 6, 2015, the decedent called Somerville Family Practice complaining of nausea and vomiting. The doctor, who was employed by Mount Auburn Hospital but treated patients of Somerville Family Practice, talked to her over the telephone and

---

[3] The plaintiffs dismissed their claims against the nurse practitioner and Somerville Family Practice prior to trial.

then prescribed an antiemetic.  Three days later, the decedent died from diabetic ketoacidosis.

The plaintiffs filed an action on behalf of the decedent's estate, alleging that the doctor was negligent.  So far as we can tell, the plaintiffs' theory of liability was that the doctor should have directed the decedent to be seen immediately in person, and that this would have resulted in the discovery of the decedent's undiagnosed diabetes in time to save her life.  The defense theory was that the doctor's actions were appropriate in light of the limited information available to her.

Prior to trial, the plaintiffs' attorney requested attorney-conducted voir dire and submitted the following twelve questions:

"1.  Do you have any feelings against medical malpractice lawsuits?

"2.  Are you, a member of your family or a close friend a health care professional?

"3.  Knowing that this is a medical malpractice case, would you tend to favor the doctor even a little bit, at the outset before hearing any evidence?

"4.  Do you believe that a patient or patient's family should be allowed to sue a doctor for money damages if the patient has been injured and died as a result of the negligence of the doctor?

"5.  If a doctor's treatment was negligent, meaning below the professional standards required of her, but she did not intend to harm the patient, would you have any difficulty

in holding the doctor responsible for all of the harm caused?

"6. There are going to be experts on both sides of this case. They will not agree on much. Will you be able to listen to the evidence, the judge's instructions and make an assessment of which expert to believe or will you say if there is no consensus between the experts I simply will not find in favor of the patient's family?

"7. You are not allowed to let sympathy affect your decision. Can you assure us that you will not let your sympathy for the family of the person who died affect your decision in this case? That you will base your decision only on the evidence and the law even [if] you feel sorry for the patient's family?

"8. Can you also assure us that you will not let any sympathy for the doctor affect your decision in this case? That you will base your decision only on the evidence and the law even [if] you feel sorry for [the] doctor?

"9. One of the claims in this case is for the wrongful death of a 51 year old. The lawsuit seeks compensation on behalf of the patient's mother, who is now 90 years old, for the loss of society and companionship of her daughter. If the plaintiffs prove that the doctor was negligent and caused the patient's death, is there anything about these facts that may prevent you from making a full and fair assessment of the damages?

"10. One of the claims in this case is for conscious pain and suffering of the patient who died. If the plaintiffs prove that the doctor was negligent and caused the patient to suffer, is there anything about this aspect of the case that may prevent you from making a full and fair assessment of the damages?

"11. In cases like this, the plaintiffs are not required to prove their case beyond a reasonable doubt. They are required to prove their case on the basis of more likely true than not true. Will you have any difficulty in applying this legal standard to this case or will you likely require the plaintiffs to provide more proof than more likely true than not true?

"12.  Some people have difficulty sitting in judgment of another.  That is something that is required of judges and when there is a jury trial, it is something that is required of jurors.  As you sit here now, can you assure us that after you hear all of the evidence and the judge instructs you on the law that you must follow, that you will be able to carry out this important duty and judge this case based only upon the facts and the law?"

The trial judge declined to ask the questions because "[t]oo many of [them] . . . [were] almost over the line in prejudging the case."  Instead, the judge indicated that he would ask six individual voir dire questions and promised the parties "an[] opportunity for some reasonable follow-up."  These were the trial judge's six questions:

1.  "Do you have any strong feelings about people who seek money in a lawsuit?"

2.  "Have you, any member of your immediate family or a close personal friend ever filed or considered filing a lawsuit against a healthcare provider?"

3.  "Have you . . . ever had a negative experience in a hospital with a nurse or a doctor?"

4.  "Ever been employed in a hospital, by a hospital, physician, medical group, healthcare facility or any other medical organization?"

5.  "Have you ever suffered from a medical condition that you believe was caused by improper or inappropriate medical care of any kind?"

6.  "And do you have any particularized familiarity with diabetes?"

After hearing the trial judge's six questions, the plaintiffs' attorney requested that the prospective jurors be asked if "they have any feelings against medical malpractice

lawsuits." The trial judge declined to ask that and told the plaintiffs' attorney that he could not ask it either. The trial judge explained that the prospective jurors "know it's a medical malpractice case. I'm going to ask them generally if they have any biases or opinions. I'm just going to cover it that way. I'm not going to let you get into any questions that get on the line in prejudging the case." The trial judge further explained that his "general questions are questions about bias or is there any reason why they couldn't be a fair and impartial juror in this case based solely on the evidence . . . that's presented to [them]. If they have a bias, I think it's going to be flushed out that way."

The plaintiffs' attorney argued that "no one thinks that they are not biased, they're not prejudiced. That's why sometimes a much more pointed question needs to be asked." The trial judge explained,

> "[The prospective jurors are] going to know from the get go from my preliminary comments and description of the case that this is a medical malpractice case. So I appreciate you looking to peel the onion a little bit further, but once we start getting into those types of questions, I think, you know, I just think it gets too close to -- even if it's not prejudging, I think it's covered by the other information that they're going to have and the questions that are going to be put to them, both by the questions they already answered in their confidential juror questionnaires, the subsequent questions I'm going to ask them as a group and then the individual questions I'm going to ask them once they get into the witness box."

The plaintiffs' attorney objected to the exclusion of the questions.

Voir dire began. Before questioning prospective jurors individually, the trial judge explained to them that this was a medical malpractice lawsuit. The judge asked them as a group, "Is there anything about this case that gives you concern about your ability to be a fair and impartial juror in your ability to render a true and just verdict based solely on the evidence and the law that's presented to you here in this courtroom?" The trial judge also said, "At the end of this case, I'll instruct you on the law, which you'll then apply to the case that was presented. Would you have any trouble deciding this case based only on the evidence at trial and the legal instructions I explain[] to the jury?"

The first prospective juror was called for individual voir dire, and, after the trial judge asked his six questions, the following exchange took place between the plaintiffs' attorney and the prospective juror:

> Plaintiffs' attorney: "Bearing in mind that you're in the medical field, you're a registered nurse, and I represent the estate of the lady who died, am I starting off a little bit behind the starting line from the get go or right at the starting line?"

> Prospective juror: "I'm not sure I understand the question."

> <u>Plaintiffs' attorney</u>:  "Okay.  So, would you tend to lean toward one side or the other at the very beginning of the case before you hear any evidence?"
>
> <u>The judge</u>:  "If she can be fair and impartial?"
>
> <u>Plaintiffs' attorney</u>:  "I'm sorry?"
>
> <u>The judge</u>:  "If she can be fair and impartial?"

The attorneys went to sidebar, and the judge explained that he was not going to allow questions about whether the prospective juror was "leaning one way or the other."  The plaintiffs' attorney objected.  After the second prospective juror was questioned, the trial judge allowed the plaintiffs to have a standing objection that, "[b]ased upon the limited questioning permitted, [they] don't have any evidence to challenge for cause."

The trial judge allowed both parties to ask all of their other follow-up questions without interruption.  The plaintiffs' attorney asked one prospective juror two questions:  whether the prospective juror knew one of the defense experts, and whether the defense expert's place of employment (the same place of employment as the prospective juror's spouse) would "potentially impact [the prospective juror's] impartiality in this case."  The doctor's attorney asked eight prospective jurors seventeen questions:  (1) whether a prospective juror's "training or experience with diabetes [as a registered nurse would] impact [that prosecutive juror's] ability to be impartial"; (2) whether

9

a prospective juror had graduated from college; (3) three questions about what a prospective juror meant by writing that she was "a very empathetic person"; (4) two questions about a lawsuit involving a prospective juror's sister; (5) why a prospective juror stated that she hoped that she could be impartial; (6) three questions about a negative experience that a prospective juror had had with a doctor for that prospective juror's father; (7) three questions about a prospective juror's employment in a health care-related field; and (8) three questions about an unemployed prospective juror's last job.

After the trial, the jury found that the doctor was not negligent, and judgment entered accordingly. This appeal followed.

2. <u>Standard of review</u>. We review limitations on attorney-conducted voir dire for an abuse of discretion. See <u>Commonwealth</u> v. <u>Dabney</u>, 478 Mass. 839, 848, cert. denied, 139 S. Ct. 127 (2018). Accord <u>Commonwealth</u> v. <u>Garuti</u>, 454 Mass. 48, 52 (2009) ("The scope of a voir dire is in the sound discretion of the trial judge and will be upheld absent a clear showing of abuse of discretion"). "An abuse of discretion occurs only where the judge makes a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives." <u>Matter of the Estate of Urban</u>, 102 Mass. App. Ct. 284, 296 (2023), quoting

Barbetti v. Stempniewicz, 490 Mass. 98, 105 (2022).  If there was an abuse of discretion, we review for whether it prejudiced the plaintiffs' case.  See G. L. c. 234A, § 74 ("any irregularity in . . . impanelling . . . jurors . . . shall not be sufficient to cause a mistrial or to set aside a verdict unless objection to such irregularity or defect has been made as soon as possible after its discovery or after it should have been discovered and unless the objecting party has been specially injured or prejudiced thereby").

3.  Attorney-conducted voir dire.  Superior Court "trial judges must permit attorney-conducted voir dire upon request." Dabney, 478 Mass. at 848.  See G. L. c. 234A, § 67D (1) ("In addition to whatever jury voir dire of the jury venire is conducted by the court, the court shall permit, upon the request of any party's attorney or a self-represented party, the party's attorney or self-represented party to conduct an oral examination of the prospective jurors at the discretion of the court"); Rule 6(3)(b) of the Rules of the Superior Court (2017) ("The trial judge shall allow attorney or party voir dire if properly [and timely] requested").  See also Commonwealth v. Leonard, 103 Mass. App. Ct. 635, 637-638 & n.5 (2023) (error for District Court trial judge to deny properly requested attorney-conducted voir dire allowed by District Court standing order). Nonetheless, judges "need not [approve] the specific questions

proposed by the [parties]." Commonwealth v. Steeves, 490 Mass. 270, 284 (2022), quoting Commonwealth v. Morales, 440 Mass. 536, 548-549 (2003).  Judges may, for instance, exclude "questions that are likely to confuse, misinform, or mislead the jury because of their format or wording."  Dabney, supra at 850-851.

Here, the trial judge acted within his discretion in rejecting the plaintiffs' questions, at least as they were phrased, as confusing and phrased in a manner that appeared designed to persuade the jury before the evidence began.  The judge, although not asking the questions proposed by the plaintiffs' attorney, did explore potential juror bias against persons seeking money in a medical malpractice lawsuit, by "ask[ing the prospective jurors] generally if they have any biases or opinions" after telling them that the case was a medical malpractice lawsuit.  Additionally, the judge asked several more pointed questions about prospective jurors' experience with health care providers and medical issues, including asking one question that was nearly identical to a question proposed by the plaintiffs' attorney.[4]

---

[4] The plaintiffs' second question ("Are you, a member of your family or a close friend a health care professional?") is nearly identical to the trial judge's fourth question ("Have you, any member of your immediate family or a close personal friend ever . . . been employed in a hospital, by a hospital, physician, medical group, healthcare facility or any other medical organization?").

We do not mean to suggest that the trial judge was required to proceed the way he did. Among other restrictions, counsel is forbidden from asking "[q]uestions framed in terms of how the juror would decide this case," "questions about what evidence would cause the juror(s) to find for the attorney's client," and questions that "argue an attorney's or party's case or indoctrinate any juror(s)." Rule 6(3)(e) of the Rules of the Superior Court. There is no categorical bar against questions that are specific to the case, nor is a party forbidden from trying to discern a prospective juror's sympathies, such as, for example, asking whether a prospective juror would have sympathy with either an injured patient or a doctor who has been sued that might affect the prospective juror's ability to be fair or impartial. A judge would act well within the parameters of judicial discretion in allowing questions phrased in this manner. Indeed, we encourage trial judges to be amenable to attorney-proposed questions to explore potential juror bias specific to the case.

If phrased correctly, the questions proposed here may have been acceptable. Indeed, the judge may well have acted within his discretion in allowing even some of the questions on the plaintiffs' list. We hold merely that excluding the particular questions here while inquiring into the same topic area with other questions was within the judge's broad discretion to

manage the jury selection process while accommodating attorney-conducted voir dire.  See Dabney, 478 Mass. at 852 ("judge did not abuse her discretion in declining to allow defense counsel to continue posing this specific question, and instead choosing to probe potential juror bias on the question of the defendant's right not to testify with her own form of that question").  See also Commonwealth v. Espinal, 482 Mass. 190, 195 (2019), quoting Commonwealth v. Lopes, 440 Mass. 731, 736 (2004) ("A trial judge, who is aware of the facts of a particular case and can observe firsthand the demeanor of each prospective juror, is in the best position to determine what questions are necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially").

Contrary to the plaintiffs' assertion that the trial judge "confined plaintiff[s'] counsel's follow-up to asking prospective jurors whether they could be 'fair and impartial,'" the record reveals that the trial judge allowed the attorneys to ask reasonable follow-up questions.  Cf. Steeves, 490 Mass. at 287 ("the judge erred in instructing counsel that attorney-conducted voir dire is properly limited to questions solely relating to apparent bias, and does not include the opportunity to elicit information that may help counsel exercise a peremptory challenge").  Before voir dire began, the trial judge explicitly told the attorneys that he would provide "an[]

opportunity for some reasonable follow-up" questions.  See Rule 6(3)(c) of the Rules of the Superior Court ("When attorney or party voir dire is allowed, the trial judge shall, at a minimum, allow the attorneys or parties to ask reasonable follow-up questions seeking elaboration or explanation concerning juror responses to the judge's questions, or concerning any written questionnaire").  The doctor's attorney took advantage of this offer, asking seventeen questions of eight potential jurors.  This included questions about prospective jurors' employment, negative experiences with medical providers, and jury questionnaire answers.

The plaintiffs' attorney, by contrast, chose to ask follow-up questions of only two prospective jurors.  While the plaintiffs' attorney was questioning the first prospective juror, the trial judge appropriately intervened when the prospective juror did not understand the attorney's confusing question about whether he was "starting off a little bit behind the starting line from the get go or right at the starting line."  See Dabney, 478 Mass. at 850 (although attorney's proposed "question was well intentioned and directed to proper subject matter," judge could exclude it as confusing).  Without interruption, however, the trial judge allowed the attorney to ask another prospective juror whether the prospective juror knew one of the defense experts, and whether the defense expert's

place of employment (the same place of employment as the prospective juror's spouse) would "potentially impact [the prospective juror's] impartiality in this case." The judge allowed reasonable attorney follow-up during voir dire, so long as the questions were not confusing or asking the prospective jurors to prejudge the case. The judge acted within his discretion.

<u>Judgment affirmed</u>.
